Syracuse, New York

**Hearing Date & Time:  August 3, 2015 at 10:00 a.m.**

HERRICK, FEINSTEIN LLP
Robert L. Rattet
Andrew C. Gold
Stephen B. Selbst
2 Park Avenue
New York, New York 10016
(212) 592-1400
(212) 592-1500 (fax)
rrattet@herrick.com
agold@herrick.com
sselbst@herrick.com

PHILLIPS LYTLE LLP
William J. Brown
125 Main Street
Buffalo, New York 14203
(716) 847-7089
wbrown@phillipslytle.com

*Proposed Attorneys for the Debtor and Debtor in
Possession*

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

In re                                                          Chapter 11

COYNE INTERNATIONAL ENTERPRISES            Case No. _____
CORP.,

            Debtor.[1]
---------------------------------------------------------x

**MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING
DEBTOR IN POSSESSION TO OBTAIN POSTPETITION FINANCING PURSUANT
TO 11 U.S.C. §§ 105, 361, 362, 363 AND 364; (II) GRANTING LIENS, SECURITY
INTERESTS AND SUPERPRIORITY CLAIMS; (III) AUTHORIZING USE OF CASH
COLLATERAL AND GRANTING ADEQUATE PROTECTION; (IV) MODIFYING
THE AUTOMATIC STAY; AND (V) SCHEDULING A FINAL HEARING**

Coyne International Enterprises Corp., the above-captioned debtor and debtor in

possession (the "Debtor"), by its proposed counsel, Herrick, Feinstein LLP, as and for its motion

(the "Motion") for entry of an interim order substantially in the form annexed hereto as Exhibit

---

[1] The last four numbers of the Debtor's taxpayer identification number are 0758.  The Debtor's address is 140
Cortland Avenue, Syracuse, New York 13202.

"A" (the "Interim Order"), and a final order (the "Final Order" and, together with the Interim

Order, the "DIP Orders"): (i) authorizing the Debtor to incur debt on a post-petition basis (the

"Postpetition Debt") under that certain Debtor-In-Possession Credit Agreement (as amended,

supplemented or otherwise modified from time to time, the "Postpetition Credit Agreement")

between the Debtor and NXT Capital LLC ("NXT"), in its capacity as agent (in such capacity,

"Postpetition Agent") to the lenders thereunder (collectively, the "Postpetition Lenders"), a copy

of which is annexed hereto as Exhibit "B"; (ii) granting liens and superpriority administrative

expense status in connection with the Postpetition Debt (defined below) pursuant to 11 U.S.C. §

364; (iii) authorizing the Debtor to use cash collateral pursuant to 11 U.S.C. § 363; and

(iv) scheduling a final hearing with respect to the relief requested herein pursuant to Rule 4001

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), respectfully represents

as follows:

## SUMMARY OF RELIEF REQUESTED

1.      This Motion is a standard request to approve a commercially reasonable

lending facility between a debtor in possession and an established institutional lender and to

permit use of cash collateral.  The Debtor submits that the proposed financing, which for the

purposes of this Motion includes the authority to use cash collateral, is essentially a continuation

of a pre-petition lending arrangement with the Debtor's prepetition lenders.

2.      The proposed financing is advantageous to the Debtor because it provides

critical debtor-in-possession financing during the pendency of the Debtor's chapter 11 case.  The

need for the financing is apparent, the terms are reasonable and the Debtor respectfully submits

that the Motion should be granted.  The funds provided by the post-petition financing requested

herein are sufficient to pay the estimated administrative expenses in the Debtor's chapter 11 case

through the date of the sale of its assets.

2

3.    The following is a summary of the material terms of the Debtor's request

for authority, on an interim and final basis, to enter into the Postpetition Credit Agreement[2] and

to use cash collateral:

- The Postpetition Lenders agree to make Revolving Loans to the Debtor not to exceed the principal amount of the Revolving Loans projected to be outstanding during such week as set forth in the Budget.  Within the foregoing limits, the Debtor may borrow, re-borrow, prepay, or repay Revolving Loans from time to time. Each request for a borrowing shall be in the minimum amount of $50,000.

- The Debtor shall deliver to Postpetition Agent a Notice of Borrowing with respect to each proposed borrowing of a Revolving Loan on the day of such borrowing for loans equal to or less than $250,000, and three days' prior to such borrowing for loans greater than $250,000.  A Notice of Borrowing shall be irrevocable.

- The Postpetition Agent is authorized to make Revolving Loans to pay interest, fees, expenses and other charges payable by the Debtor under the Postpetition Credit Agreement or any other Financing Document, so long as the Revolving Loan Obligations do not exceed the Revolving Loan Limit after giving effect to such proposed Revolving Loan.

- The Revolving Loan Commitment shall terminate upon the earlier of (A) the Commitment Expiry Date and (B) any date with the Postpetition Agent or Postpetition Lenders elect to terminate the Revolving Loan Commitment upon the occurrence of an Event of Default.

- The Debtor shall prepay the Loans: (A) 100% of any Major Casualty Proceeds received by the Debtor; (B) 100% of proceeds from the Debtor's incurrence of Debtor or the sale of any Debt or Capital Stock; (C) 100% of the Net Cash Proceeds of any Asset Disposition, subject to authorization by the Court; and (D) 100% of any Extraordinary Receipts received by the Debtor.

---

[2] Capitalized terms not defined in this summary shall have the meaning ascribed to them in the Credit Agreement. The Postpetition Credit Agreement shall govern in all respects in the event of any discrepancy between the Postpetition Credit Agreement and this Motion.

- The Loans shall bear interest at the Base Rate plus the Base Rate Margin for a Base Rate Loan, and at LIBOR plus the LIBOR Margin for a LIBOR Loan.

- The Debtor shall pay the Postpetition Agent those fees specified in Sections 2.5(b), (d), (e), and (g)(iv).

- The Debtor shall provide the following reporting: (A) within 30 days after the end of each month, a consolidated balance sheet of the Debtor for such month; (B) within 90 days after the end of each Fiscal Year, a consolidated balance sheet for such year; (C) within 30 days after the end of each Fiscal Year, the Debtor's annual operating plans, forecasts and cash flow projections; (D) no later than the Friday of each week, the Debtor's sales reports; and (E) at least three business days prior to the beginning of each week, an updated Budget for the succeeding thirteen week period, and a Variance Report.

- The proceeds of Revolving Loans shall be used by the Debtor in accordance with the terms of the Interim and Final Orders and the Budget.

- The Debtor shall perform and deliver the items relating to certain bankruptcy transaction milestones set forth on Schedule 4.14 of the Postpetition Credit Agreement.

- The Debtor will not, directly or indirectly, make or pay any Subordinated Debt.

- The Debtor will not, directly or indirectly, consolidate or merge with or into any other entity. Upon any Asset Disposition approved by the Court, the Postpetition Agent and Postpetition Lenders will release all liens upon such Collateral.

- The occurrence of any of the conditions and/or events set forth in Section 8.1 of the Postpetition Credit Agreement shall constitute an Event of Default, including (A) the Debtor's failure to pay any principal, interest or fee when due; (B) any change in the Debtor's board of directors; (C) the Final Order is not entered within 21 days following entry of the Interim Order; (D) an order is entered in the Debtor's chapter 11 case appointing a trustee or an examiner with enlarged powers, converting the case to a chapter 7 case, or terminating the Debtor's exclusive periods to file and solicit acceptances for a chapter 11 plan; (E) a motion filed or order entered permitting the Debtor to incur secured debt; (F) the Debtor challenges the extent, validity or priority of the Obligations; and (G) the Debtor fails to maintain sufficient projected borrowing

4

capacity under the Postpetition Credit Agreement to pay accrued administrative obligations when due.

- The Postpetition Liens, the Prepetition Senior Liens, the Priority Liens, the Permitted Priority Liens and the Prepetition Junior Liens (collectively, the "Lender Liens") shall be subject to the right of payment of the following expenses (collectively, the "Carveout"): (i) all fees required to be paid to the clerk of the Court and to the Office of the United States Trustee under 28 U.S.C. §1930(a) plus interest pursuant to 31 U.S.C. §3717 (the "Statutory Fees"), in each case accruing or required to be paid prior to the Termination Date; (ii) all reasonable fees and expenses incurred by a trustee appointed under section 726(b) of the Bankruptcy Code in an amount not to exceed $50,000; (iii) to the extent allowed at any time by the Court, but subject in all respects to the aggregate amounts set forth in the Budget for each applicable time period, all accrued and unpaid fees, disbursements, costs and expenses incurred by professionals or professional firms retained by the Debtor and the Committee prior to the first Business Day following delivery by the Postpetition Agent of a Carveout Trigger Notice; and (iv) to the extent allowed at any time by the Court, but subject in all respects to the Budget, all accrued and unpaid fees, disbursements, costs and expenses incurred by professionals or professionals firms retained by the Debtor and the Committee at any time after the first Business Day following delivery of the Postpetition Agent of the Carveout Trigger Notice in an aggregate amount not to exceed $75,000 (the amount set forth in this clause (iv) being the "Post Carveout Trigger Notice Cap"). For purposes of the foregoing, "Carveout Trigger Notice" shall mean a written notice delivered by the Postpetition Agent to the Debtor and its counsel, the U.S. Trustee and counsel to the Committee, which notice may delivered following the occurrence of and during the continuance of an Event of Default, and stating that the Post Carveout Trigger Notice Cap has been invoked. Notwithstanding anything to the contrary contained in this Order, the Carveout shall be senior to the Lender Liens and all liens and claims (including, without limitation, administrative and superpriority claims) securing the Obligations, and all forms of adequate protection, Liens, security interests and other claims granted pursuant to this Order.

## INTRODUCTION

4.    On July 31, 2015 (the "Petition Date"), the Debtor filed a voluntary

petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code")

in this Court, and an order for relief under section 301 of the Bankruptcy Code was entered in this case.

5.       The Debtor has been authorized to remain in possession of its property and to continue in the operation and management of its businesses as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6.       No official committee of unsecured creditors has been appointed by the Office of the United States Trustee for the Northern District of New York (the "U.S. Trustee") in the Debtor's chapter 11 case.

7.       The Debtor is one of the largest privately owned commercial laundry companies in the United States.  It is a leading route-based service provider, selling and renting a wide variety of work garments, shop towels, floor mats, dust mops, and other accessories in the eastern half of the United States.

8.       Founded by J. Stanley Coyne, the Debtor has been family owned and operated since 1929.  The Debtor serves customers in 24 states through nine commercial laundry plants and 16 service centers.  Coyne's plants are located at Bristol, Tennessee; Buffalo, New York; Cleveland, Ohio; Greenville, South Carolina; London, Kentucky; New Bedford, Massachusetts; Richmond, Virginia; Syracuse, New York; and York, Pennsylvania.

9.       Additional information about the Debtor's businesses and the events leading up to the Petition Date can be found in the Affidavit of the Debtor's Chief Executive Officer, Mark Samson (the "Samson Affidavit"), filed on the Petition Date, and incorporated herein by reference.

## JURISDICTION AND VENUE

10.      The Court has jurisdiction to hear this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue in this District is proper under 28 U.S.C. §§ 1408 and 1409.

6

11.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

**PREPETITION FUNDING OF THE DEBTOR'S OPERATIONS**

12.     Pursuant to that certain Credit Agreement dated as of December 16, 2011 (as amended, supplemented or otherwise modified from time to time, the "Prepetition Senior Credit Agreement," and together with the related loan documents, the "Prepetition Senior Documents"), by and among the Debtor, NXT, as administrative agent to the lenders (in such capacity, "Prepetition Senior Agent"), and the additional lenders party thereto (collectively, the "Prepetition Senior Lenders"), the Prepetition Senior Lenders agreed to make a term loan to the Debtor in the original principal amount of $32,000,000 and revolving loans up to the original principal commitment amount of $3,000,000.     A copy of the Prepetition Senior Credit Agreement is annexed hereto as Exhibit "C".

13.     The Debtor acknowledges and believes that, as of the Petition Date, the aggregate amount of no less than $33,918,083.00 was due and owing in respect of loans and other financial accommodations made by the Prepetition Senior Lenders pursuant to the Prepetition Senior Documents, inclusive of accrued and unpaid interest, fees, expenses, costs and other charges incurred in connection therewith, as well as all other "Obligations" thereunder (as defined in the Prepetition Senior Documents) (all of the foregoing, the "Prepetition Senior Debt").

14.     Pursuant to that certain Secured Subordinated Credit Agreement dated as of December 16, 2011 (the "Prepetition Junior Credit Agreement," and together with the related loan documents, the "Prepetition Junior Documents"), among the Debtor, Medley Opportunity Fund II LP ("Medley"), as lender and as agent to lenders (in such capacity, "Prepetition Junior Agent") and the additional lenders thereunder (the "Prepetition Junior Lenders"), the Prepetition Junior Lenders agreed to make a term loan to the Debtor in the original principal amount of

$18,000,000. The relative rights and priorities of Prepetition Senior Agent, the Prepetition Senior Lenders, Prepetition Junior Agent, and the Prepetition Junior Lenders are governed by that certain Subordination and Intercreditor Agreement dated as of December 16, 2011 (as amended, supplemented or otherwise modified from time to time, the "Subordination Agreement"). Pursuant to the Subordination Agreement, the payment of the amounts due and owing in respect of the Prepetition Junior Documents (the "Prepetition Junior Debt"), is subordinate to the payment in full of the Prepetition Senior Debt.

15.    Pursuant to that certain Guarantee and Collateral Agreement dated as of December 16, 2011, the Prepetition Senior Debt is secured by security interests (the "Prepetition Senior Liens") granted by the Debtor and certain guarantors to Prepetition Senior Agent, for the benefit of the Prepetition Senior Lenders, in substantially all of the assets of the Debtor (the "Prepetition Collateral").

16.    The Debtor believes that all cash of the Debtor wherever located on the Petition Date represented either proceeds of loans or other financial accommodations from the Prepetition Senior Lenders to the Debtor or proceeds of the Prepetition Collateral. Pursuant to the Prepetition Senior Documents, the Debtor believes that Prepetition Senior Agent, on behalf of the Prepetition Senior Lenders, has a first priority, valid, and perfected security interest in and lien on all of the Debtor's cash, including but not limited to those funds held in certain bank accounts at First Niagara (the "Blocked Accounts") on the Petition Date, and that those funds constitute "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code.

17.    The Debtor believes that the Prepetition Senior Liens constitute valid, binding, enforceable, and perfected first-priority liens subject only to (a) the Carve-Out and (b) liens in favor of third parties on the Prepetition Collateral  permitted by the Prepetition Senior

8

Documents (the "Permitted Priority Liens"), which third-party liens, as of the Petition Date: (i) had priority under applicable law over the Prepetition Senior Debt, (ii) were not subordinated to the Prepetition Senior Debt by agreement or applicable law, and (iii) were non-avoidable, valid, properly perfected and enforceable as of the Petition Date, and are not subject to avoidance or subordination (except insofar as such liens are subordinated to the Permitted Priority Liens and the Carve-Out in accordance with the provisions of the Interim Order) pursuant to the Bankruptcy Code or applicable non-bankruptcy law.   The Debtor believes: (A) that the Prepetition Senior Debt constitutes legal, valid, and binding obligations of the Debtor, enforceable in accordance with the terms of the Prepetition Senior Documents (other than in respect of the stay of enforcement arising from Bankruptcy Code section 362); (B) that no offsets, defenses, or counterclaims to the Prepetition Senior Debt exist; and (C) that no portion of the Prepetition Senior Debt is subject to avoidance or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

        18.    An immediate and critical need exists for the Debtor to obtain funds in order to continue the operations of its businesses.  Without such funds, the Debtor will not be able to pay its payroll, pay other direct operating expenses, or obtain goods and services needed to carry on its businesses during this sensitive period in a manner that will avoid irreparable harm to the Debtor's estates, creditors, customers, and employees.  At this time, the Debtor's ability to finance its operations and the availability of sufficient working capital and liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations are vital to the confidence of the Debtor's vendors and suppliers of other goods and services, to its customers, and to the preservation and maintenance of the going concern value of the Debtor's businesses. The Debtor is unable to obtain the required funds in the form of unsecured credit or

unsecured debt allowable under section 503(b)(1) of the Bankruptcy Code, as an administrative

expense pursuant to section 364(a) or 364(b) of the Bankruptcy Code, unsecured debt having the

priority afforded by section 364(c)(1) or secured debt as described in section 364(c)(2) or

364(c)(3) except as set forth herein.

19.    Prepetition Senior Agent asserts on behalf of the Prepetition Senior

Lenders, and the Debtor believes, that substantially all of the Debtor's assets are subject to the

Prepetition Senior Liens.  Prepetition Senior Agent has consented to the use of the Prepetition

Collateral by the Debtor, solely to the extent consistent with the terms of the Postpetition Credit

Agreement, the Interim Order and the Budget, including the assurances that the liens and the

various claims, superpriority claims, and other protections granted pursuant to the Interim Order

and Final Order will not be affected by any subsequent reversal or modification of the Interim

Order or Final Order or any other order, as provided in section 364(e) of the Bankruptcy Code,

which is applicable to the postpetition financing arrangement contemplated by the Interim Order

and the Final Order.

20.    Subject to the provisions of the Postpetition Credit Agreement, the

Postpetition Lenders have agreed to provide postpetition financing to permit the Debtor to

implement a restructuring.  Pursuant to the Subordination Agreement, the Prepetition Junior

Lenders are deemed to consent.

21.    The Debtor seeks authorization to borrow money pursuant to the credit

facility (the "DIP Facility") maintained under the Postpetition Credit Agreement and the Interim

Order (all loans, advances and any other indebtedness or obligations, contingent or absolute,

which may now or from time to time hereafter be owing by the Debtor to Postpetition Agent and

the Postpetition Lenders, the "Postpetition Debt"), and to perform its obligations thereunder,

solely in accordance with, and subject to, the terms of the Interim Order, in compliance with (on

a line-by-line basis) and for the purposes of funding those expenses set forth in the budget

attached as <u>Exhibit "D"</u> hereto (as may be modified or supplemented from time to time without

further order of this Court by additional budgets (covering any time period covered by a prior

budget or covering additional time periods) to which PostpetitionAgent, the Postpetition

Lenders, and the Debtor agree and a copy of which is provided to any committee appointed by

the Court, the "<u>Budget</u>").

## **GROUNDS FOR EMERGENCY INTERIM RELIEF**

22. The Debtor respectfully submits that without immediate access to the DIP

Facility, the Debtor's reorganization efforts will be irreparably harmed.  As indicated in the

Budget, over the course of the next four weeks, or until such time as this Court can schedule a

final hearing on the Motion, the Debtor will either be accruing or paying substantial amounts of

non-deferrable obligations, the largest of which relate to payroll and payroll-related expenses.

During that period, the Debtor predicts that it will need to borrow $1,138,000.00 from the DIP

facility to meet their obligations set forth in the Budget.  Even if given the authority to use all

available cash collateral, the Debtor's projected cash sales during this period, which would in

any event constitute the Prepetition Senior Lenders' cash collateral, will not be sufficient to meet

these essential obligations as they become due.  The Debtor proposes that all loans and advances

authorized on an interim basis be subject to the terms of the Postpetition Credit Agreement

generally and the Interim Order specifically.

23. The pre-petition financing arrangement which the Debtor negotiated with

Prepetition Senior Agent and the Prepetition Senior Lenders was negotiated at arms' length and

contains terms favorable to the Debtor.  The DIP Facility was likewise negotiated with the

Postpetition Agent and the Postpetition Lenders at arms' length and contains terms favorable to the Debtor. Based upon the Debtor's familiarity with the market for this type of loan, and the current state of the credit markets regarding debtor-in-possession loans, the Debtor and its professionals believe that it is unlikely that there is any other lender, given the time limitations and exigencies, which could offer more favorable terms.

24.     The Debtor cannot operate in bankruptcy without access to the liquidity provided by the DIP Facility. The many entities and individuals, including the Debtor's approximately 620 employees, and the numerous suppliers and vendors who do business with the Debtor all will be beneficiaries of the DIP financing. The Debtor believes that if the relief sought herein is granted, it will provide the Debtor with the opportunity to pursue its business strategy and to preserve its assets and business for the benefit of its creditors and estate.

## SPECIFIC RELIEF REQUESTED

25.     This Motion is brought pursuant to sections 361, 363(b) and 364(b) and (c) of the Bankruptcy Code, and *inter alia*, Bankruptcy Rule 4001. The Debtor seeks entry of the Interim Order authorizing the Debtor to borrow from the Postpetition Lenders and to use cash collateral, pursuant to the terms of the Postpetition Credit Agreement substantially, and without material change, in the form annexed hereto and entry of a Final Order, which Final Order is substantially similar to the Interim Order but for the differences highlighted herein.

26.     Pursuant to sections 364(c)(1) and (2) of the Bankruptcy Code, this Court is authorized to permit a debtor to obtain post-petition credit entitled to superpriority administrative expense status and secured by a first security interest in and lien on property of the estate, subject only to existing valid and perfected security interests and liens in a debtor's

collateral, provided a debtor is otherwise unable to obtain unsecured credit allowable under section 363(b)(1) of the Bankruptcy Code as an administrative expense.

27.    Pursuant to section 364(d) of the Bankruptcy Code, this Court is authorized to permit a debtor to obtain post-petition credit secured by a senior or equal lien on property of the estate that is subject to a lien, provided a debtor is otherwise unable to obtain sufficient financing without such senior liens.

28.    Pursuant to, *inter alia*, sections 363 and 361 of the Bankruptcy Code, the Court may authorize the use of cash collateral, provided that all entities with an interest therein received adequate protection.

29.    The Debtor proposes to obtain post-petition credit from the Postpetition Lenders and to use cash collateral to pay ordinary and necessary operating expenses to the extent set forth in the Budget.  The Debtor's proposed operational expenditures relate to, *inter alia*, the post-petition purchase of inventory and supplies, and to pay for outside services and payroll and payroll-related expenses.  At the current time, no material capital expenditures are contemplated.

30.    As demonstrated herein and in the Budget, and as will be shown at any evidentiary hearing held with respect to the Motion (if required), the financing, borrowing and use of cash collateral is necessary, appropriate and, indeed, essential to the Debtor's reorganization efforts.  It is, moreover, given the Debtor's economic circumstances and the time constraints and general business conditions, the most favorable financing - if not the only financing - currently available to the Debtor.  Absent the ability to borrow, the Debtor will be unable to support its operations and reorganize its business.

31.    The Debtor also seeks authorization to use cash collateral and to grant Prepetition Senior Agent and Prepetition Junior Agent adequate protection against any

diminution in the value of the Prepetition Collateral.  In the ordinary course of business, the

Debtor uses cash collateral to fund ongoing operations.  By this Motion, the Debtor proposes to

use the cash collateral in accordance with the Budget and to provide adequate protection to its

prepetition lenders.

32.     Pursuant to sections 361, 362, 363, 364 and 507(b) of the Bankruptcy

Code, as adequate protection to the Prepetition Senior Agent and Prepetition Junior Agent (on

behalf of their respective lenders) against any diminution of their interests in the Prepetition

Collateral resulting from, among other things, their subordination to the Carve-Out and priming

liens granted in respect of the Postpetition Debt, the Debtor proposes to grant (i) automatically

perfected Senior Replacement Liens and an allowed superpriority claim to the Prepetition Senior

Agent, and (ii) automatically perfected Junior Replacement Liens and an allowed superpriority

claim (junior to the superpriority claim granted to the Prepetition Senior Agent).

33.     Lastly, the Debtor seeks authorization to modify the automatic stay with

respect to the Prepetition Senior Agent and Prepetition Senior Lenders to the extent necessary to

allow them to effectuate the provisions of the Interim and Final Orders.  Stay modifications in

this context are ordinary and usual features of postpetition financing and, in the Debtor's

business judgment, are reasonable under the circumstances of this chapter 11 case.  The Court

should, accordingly, modify the automatic stay to the extent contemplated by the Postpetition

Documents, the Interim Order and the Final Order.

## NEED FOR INTERIM FINANCING

34.     Pending a final hearing, the Debtor requests that this Court authorize

interim financing and use of cash collateral.  Pursuant to Bankruptcy Rules 4001(b)(2) and

(c)(2), the Court may authorize a debtor to use cash collateral and to obtain credit on an interim

basis to the extent necessary to avoid immediate and irreparable harm to its estate pending a final hearing.

35.     The need for interim financing is exemplified by the expenditures forecast in the Budget.  The Budget sets forth the weekly expenditures required by the Debtor from the date of this Motion until such time as a final hearing can be held.  The Budget projects cash disbursements totaling $1,138,00.00 during the initial four week period after the filing of this chapter 11 case.  The bulk of these disbursements represent payments related payroll and other employee-related obligations, utilities, the purchase of inventory, and all expenses necessary for the continued operations of the Debtor.  The Budget demonstrates the Debtor's need for interim financing and the use of cash collateral pending the final hearing.

## AUTHORITY FOR THE REQUESTED RELIEF

36.     It is vital to the success of the Debtor's ongoing business activities and reorganization efforts that access to cash collateral and the DIP Facility be obtained immediately. Absent the immediate ability to borrow and utilize cash collateral, the Debtor faces a palpable risk of severe disruption to its business, and irreparable harm to its assets.  The Debtor's ability to sell its businesses as going concerns will be severely prejudiced, impeding its ability to reorganize.

The Debtor Satisfies the Requirements for
Obtaining Credit Under Section 364(c) of the Bankruptcy Code

37.     The Debtor proposes to obtain financing under the DIP Facility by providing security interests and liens as set forth above pursuant to sections 364(c) and (d) of the Bankruptcy Code.  Section 364(c) of the Bankruptcy Code provides as follows:

(c)     If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense,

15

the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt --

> (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;

> (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or

> (3) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

38.     Thus, the statutory requirement for obtaining postpetition credit under section 364(c) is a finding that the debtor is "unable to obtain unsecured credit allowable under section 503(b)(1) of [the Bankruptcy Code] as an administrative expense." See In re Ames Dept. Stores, Inc., 115 B.R. 34, 37-39 (Bankr. S.D.N.Y. 1990) (debtor must demonstrate a reasonable effort to obtain other sources of financing); In re Garland Corp., 6 B.R. 456, 461 n. 11 (1st Cir. BAP 1980) (secured credit under section 364 is authorized upon showing that unsecured credit cannot be obtained).

39.     Courts have articulated a three-part test to determine whether financing should be authorized under section 364(c) of the Bankruptcy Code.  Specifically, courts look to whether:

> (a)     the debtor is unable to obtain unsecured credit under section 364(b), i.e., by allowing a lender only an administrative claim;

> (b)     the credit transaction is necessary to preserve the assets of the estate; and

> (c)     the terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and the proposed lender.

In re Ames Dept. Stores, 115 B.R. at 37-39; see also In re St. Mary Hospital, 86 B.R. 393, 401-02 (Bankr. E.D. Pa. 1988).

40.     Prior to the Petition Date, the Debtor, through its financial advisors, sought to locate financing on more favorable terms.  Ultimately, the Debtor was unable to locate such financing.  Given the current uncertainty in the credit markets, including the DIP loan markets, the Debtor determined that postpetition financing on an unsecured basis would be unobtainable.

41.     The Debtor believes that the DIP Facility will provide sufficient time and funding for the Debtor to operate while it conducts the sales of substantially all of its assets.  If, however, the Debtor were unable to obtain debtor-in-possession financing, it would be unable to operate its business during the pendency of the chapter 11 case.  That, in turn, would inhibit the Debtor's sales of its businesses for going concern value, and place the Debtor's ability to reorganize in serious jeopardy.

42.     Lastly, given the Debtor's current circumstances and the uncertain credit environment, the Debtor believes that the terms of the Postpetition Credit Agreement are fair, reasonable and adequate.  Based on the foregoing, the incurrence of debt under the DIP Facility and the granting of super-priority administrative claims is appropriate under the circumstances.

The Debtor Satisfies the Requirements for Obtaining
Credit Under Section 364(d) of the Bankruptcy Code and
for Using Cash Collateral Under Section 363 of the Bankruptcy Code

43.     If a debtor is unable to obtain credit solely under the provisions of section 364(c) of the Bankruptcy Code, the debtor may nonetheless obtain credit secured by a senior or equal lien (a "priming lien") on property of the estate that is already subject to a lien under section 364(d).  Section 364(d)(1) of the Bankruptcy Code provides:

(d)(1)   The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if --

(A) the trustee is unable to obtain such credit otherwise; and

(B)  there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

11 U.S.C. § 364(d)(1).

44.   As explained above, the financing under the DIP Facility is the Debtor's only viable financing option with terms comparable to those offered by the Postpetition Credit Agreement, and the postpetition liens are an essential part of the protections provided to the Postpetition Agent and Postpetition Lenders thereunder.   Pursuant to the terms of the Subordination Agreement, Prepetition Junior Agent is deemed to have consented to the priming lien and other terms of the Postpetition Credit Agreement, related documents, and court orders.

45.   Unless a creditor consents, the use of cash collateral is conditioned upon the adequate protection of the creditor's interest.   See 11 U.S.C. §§ 363(c)(2), (e).   The Bankruptcy Code does not explicitly define "adequate protection."   However, section 361 suggests that adequate protection may be provided by (i) periodic cash payments to the extent that there is a decrease in the lien holder's interest in the property; (ii) providing additional or replacement liens; or (iii) other relief resulting in the realization of the "indubitable equivalent" of the lien holder's interest in the property.   See 11 U.S.C. § 361.   The third possibility is regarded as a "catch-all" provision, affording courts discretion, on a case-by-case basis, to determine what level of protection is appropriate to provide a secured party.   See In re Swedeland Dev. Group, Inc., 16 F.3d 552, 564 (3d Cir. 1994).

18

46.    The goal of adequate protection is to protect a secured lender against a diminution in the value of its collateral during the reorganization process.  See 495 Cen. Park, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) ("The goal of adequate protection is to safeguard the secured creditor in the value of its interest [during the chapter 11 case]."); In re Becker Indus. Corp., 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986); In re Hubbard Power & Light, 202 B.R. 680, 685 (Bankr. E.D.N.Y. 1996).  Accordingly, courts have discretion, on a case-by-case basis, to determine what level of protection is appropriate to provide a secured party.  See Becker Indus., 58 B.R. at 736; In re Swedeland Dev. Group, Inc., 16 F.3d 552, 564 (3d Cir. 1994).

47.    The Debtor believes that the Postpetition Agent and the Postpetition Lenders would not have agreed to provide the DIP Facility absent the protections afforded to them.  The Debtor believes, in its reasonable business judgment, that the benefits of the DIP Facility outweigh the risks associated with having no access to continued funding, or in seeking to obtain the use of cash collateral on a non-consensual basis.

**NO COMPARABLE ALTERNATIVE TO THE DIP FACILITY
IS CURRENTLY AVAILABLE, AND THE DIP FACILITY
IS IN THE BEST INTERESTS OF THE DEBTOR'S ESTATE**

48.    The Debtor has made a concerted, good-faith effort to obtain credit on the most favorable terms that are available.  The proposed terms of the Postpetition Credit Agreement are fair, reasonable and adequate given today's credit market.  Likewise, the various fees and charges required under the Postpetition Credit Agreement were necessary to secure agreement to provide the financing notwithstanding the volatility that exists in today's capital markets.  The terms and conditions of the Postpetition Credit Agreement were negotiated by the parties in good faith and at arm's length, and are fair and reasonable under the circumstances.  Accordingly, Prepetition Senior Agent and the Postpetition Lenders should be accorded the benefits of section 364(e) of the Bankruptcy Code in respect of such agreement.

49.     Bankruptcy courts consistently defer to a debtor's business judgment on most business decisions, including the decision to borrow money, unless such decision is arbitrary and capricious.  See e.g., Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.), 789 F.2d 1085, 1088 (4th Cir. 1986) (approving debtor in possession financing necessary to sustain seasonal business); Ames Dep't Stores, Inc., 115 B.R. at 40 ("[C]ases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest.").

50.     The financing under the Postpetition Credit Agreement and the use of the cash collateral is the sole means of providing the Debtor with liquidity and thus will enable the Debtor, *inter alia*, (a) to minimize disruption to the Debtor's business by paying on-going expenses, (b) preserve and maximize the value of the Debtor's assets for the benefit of all the Debtor's creditors, (c) avoid immediate and irreparable harm to the Debtor, creditors, its businesses, employees, and assets, and (d) permit the Debtor to pursue going concern sales of its businesses.

## NOTICE

51.     Notice of this Motion has been provided to (i) Office of the United States Trustee, (ii) the Debtor's prepetition secured creditors, and (iii) the holders of the twenty (20) largest unsecured claims against the Debtor on a consolidated basis by CM/ECF, facsimile, e-mail, telephone, or overnight courier.  In light of the nature of the relief requested herein, the Debtor submits that no other further notice is necessary.

20

52.     No prior application for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtor respectfully requests the Court (i) enter an Interim Order substantially in the form annexed hereto as Exhibit "A" (a) authorizing the Debtor's use of cash collateral, (b) authorizing the Debtor to enter into and borrow under the Postpetition Credit Agreement, (c) granting the Postpetition Agent and Postpetition Lenders liens and super-priority claims, (d) scheduling a final hearing to consider the relief sought herein on a final basis, and (e) granting any other appropriate form of relief; and (ii) immediately following the final hearing, enter a final order on substantially the same terms as the interim order.

Dated: New York, New York
       July 31, 2015

                                        HERRICK, FEINSTEIN LLP
                                        *Proposed Attorneys for the Debtor and*
                                        *Debtor-in-Possession*

                                        By: /s/ Robert Rattet
                                            Andrew C. Gold
                                            Stephen B. Selbst
                                        2 Park Avenue
                                        New York, New York 10016
                                        (212) 592-1400
                                        (212) 592-1500 (fax)
                                        rrattet@herrick.com
                                        agold@herrick.com
                                        sselbst@herrick.com