So Ordered.

_____

Margaret Cangilos-Ruiz

Signed this 11 day of September,    United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re                                                            Chapter 11

COYNE INTERNATIONAL                       Case No. 15-31160 (MCR)
ENTERPRISES CORP.,

         Debtor.[1]
-----------------------------------------------------------x

**FINAL ORDER AUTHORIZING DEBTOR TO:  (A) USE CASH
COLLATERAL; AND (B) GRANT ADEQUATE PROTECTION AND PROVIDE
SECURITY AND OTHER RELIEF TO
<u>PREPETITION SECURED PARTIES</u>**

        This matter came before this Court on the motion (the "<u>Motion</u>") of Coyne International Enterprises Corp. ("<u>Debtor</u>") requesting that this Court enter an order authorizing Debtor to:  (a) use certain Cash Collateral, (b) incur Postpetition Debt and (c) grant adequate protection and provide security and other relief to NXT Capital LLC ("<u>NXT</u>"), in its capacity as agent ("<u>Prepetition Senior Agent</u>") to the lenders party to the Prepetition Senior Credit Agreement ("<u>Prepetition Senior Lenders</u>"), Medley Opportunity Fund II LP ("<u>Medley</u>"), in its capacity as agent ("<u>Prepetition Junior Agent</u>"; together with Prepetition Senior Agent, "<u>Prepetition Agents</u>" and each a "<u>Prepetition Agent</u>") to the lenders party to the Prepetition Junior

---

[1] The last four numbers of the Debtor's taxpayer identification number are 0758.  The Debtor's address is 140 Cortland Avenue, Syracuse, New York 13202.

Credit Agreement ("Prepetition Junior Lenders"; collectively with Prepetition Senior Lenders, "Prepetition Lenders" and each a "Prepetition Lender") and NXT in its capacity as agent ("Postpetition Agent"; together Prepetition Senior Agent, "Senior Agents") to the lenders party to the Postpetition Credit Agreement ("Postpetition Lenders"; together with Prepetition Senior Lenders, the "Senior Lenders").  Unless otherwise indicated, all capitalized terms used as defined terms herein have the meanings ascribed thereto in Exhibit A (Defined Term) attached hereto and by this reference are made a part hereof.

This Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable as of the Filing Date.

Having examined the Motion, being fully advised of the relevant facts and circumstances surrounding the Motion, and having completed a hearing pursuant to Code §§ 363 and 364 and Fed. R. Bankr. P. 4001(b) and (c), and objections, if any, having been withdrawn, resolved or overruled by the Court, **THE MOTION IS GRANTED IN PART ON A FINAL BASIS AND ADJOURNED IN PART, AND THE COURT HEREBY FINDS THAT:**

A. On the Filing Date, Debtor filed a voluntary petition for relief under chapter 11 of the Code.  Debtor has retained possession of its property and continues to operate its business as debtor in possession pursuant to Code §§ 1107 and 1108.

B. The Court has jurisdiction over the Case and this proceeding pursuant to 28 U.S.C. § 1334.  Determination of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).  Venue over this Motion is proper under 28 U.S.C. § 1409(a).

C. On August 5, 2015, the Court entered the Order Authorizing Debtor to: (A) Use Cash Collateral on an Emergency Basis Pending a Final Hearing; (B) Incur Postpetition Debt on an Emergency Basis Pending a Final Hearing; and (C) Grant Adequate Protection and Provide Security and Other Relief to Prepetition Secured Parties [Docket No. 53] (the "Interim Order").

D. A Committee has been appointed in this Case.

E.   Subject to Paragraph 8 of this Order (and without prejudice to the right of the Committee to assert a Challenge based upon the findings set forth in this Paragraph E), Debtor admits, stipulates and agrees that:

1.   the Prepetition Senior Documents evidence and govern the Prepetition Senior Debt, the Prepetition Senior Liens and the prepetition financing relationship among Debtor, Prepetition Senior Agent and Prepetition Senior Lenders;

2.   the Prepetition Junior Documents evidence and govern the Prepetition Junior Debt, the Prepetition Junior Liens and the prepetition financing relationship among Debtor, Prepetition Junior Agent and Prepetition Junior Lenders;

3.   the Prepetition Senior Debt constitutes the legal, valid and binding obligation of Debtor, enforceable in accordance with the terms of the Prepetition Senior Documents;

4.   the Prepetition Junior Debt constitutes the legal, valid and binding obligation of Debtor, enforceable in accordance with the terms of the Prepetition Junior Documents;

5.   as of the Filing Date, Debtor is liable for payment of the Prepetition Senior Debt, Prepetition Senior Debt shall be an allowed claim in an amount not less than $33,918,000, exclusive of accrued and accruing Allowable 506(b) Amounts and, provided that the Court authorizes the closings of the sales of the Debtor's businesses for purchase price proceeds (or reduction of secured debt) in excess of $30,000,000, the Prepetition Senior Debt shall be an allowed secured claim in an amount of not less than $30,000,000;

6.   as of the Filing Date, Debtor is liable for payment of the Prepetition Junior Debt, and the Prepetition Junior Debt shall be an allowed claim in an amount not less than $28,660,610.78;

7.   no offsets, defenses or counterclaims to the Prepetition Senior Debt exist, and no portion of the Prepetition Senior Debt is subject to contest, objection,

-3-

recoupment, defense, counterclaim, offset, avoidance, recharacterization, subordination or other claim, cause of action or challenge of any nature under the Code, under applicable non-bankruptcy law or otherwise;

8. no offsets, defenses or counterclaims to the Prepetition Junior Debt exist, and no portion of the Prepetition Junior Debt is subject to contest, objection, recoupment, defense, counterclaim, offset, avoidance, recharacterization, subordination or other claim, cause of action or challenge of any nature under the Code, under applicable non-bankruptcy law or otherwise;

9. the Prepetition Senior Liens are Priority Liens, subject to Permitted Priority Liens and secure payment of all of the Prepetition Senior Debt;

10. the Prepetition Junior Liens secure payment of all of the Prepetition Junior Debt and are subject to the Prepetition Senior Liens and Permitted Priority Liens;

11. upon the entry of this Order, for purposes of Code §§ 506(c) and 507(b) and Fed. R. Bankr. P. 3012, as of the Filing Date, provided that the Court authorizes the closings of the sales of the Debtor's businesses generate for purchase price proceeds (or reduction of secured debt) in excess of $30,000,000, the value of the Prepetition Senior Lenders' interest in the Prepetition Collateral was not less than $30,000,000; provided, however, that nothing herein or in the Interim Order shall prejudice Prepetition Senior Agent's and any Prepetition Senior Lender's right to later: (1) assert that their respective interests in the Prepetition Collateral lack adequate protection; and (2) seek a higher valuation of the Prepetition Collateral;

12. Debtor does not have, and hereby releases, and is forever barred from bringing any claims, counterclaims, causes of action, defenses or setoff rights relating to the Prepetition Documents, the Prepetition Liens, the Prepetition Debt or otherwise, against the Prepetition Agents, the Prepetition Lenders and their respective affiliates, subsidiaries, agents, officers, directors, employees, advisors, consultants, predecessors in interest, successors and assigns.

F. Prepetition Senior Agent and Prepetition Senior Lenders have consented to, and, pursuant to the Prepetition Subordination Agreement, Prepetition Junior Agent and Prepetition Junior Lenders are deemed to have consented to, the terms of this Order and are entitled to adequate protection as set forth herein pursuant to Code §§ 361, 362, 363 and 364 for any decrease in the value of such interests in the Prepetition Collateral from and after the Filing Date.

G. Debtor needs to use Cash Collateral as provided herein through the Termination Date, in order to minimize disruption to and avoid the termination of its business operations. Entry of this Order will also enhance the possibility of maximizing the value of Debtor's business.

H. The notice provided by Debtor of the Motion, the hearing on the Motion, and the entry of this Order satisfy the requirements of Fed. R. Bankr. P. 2002, 4001(b) and (c) and 9014 and Code §§ 102(1), 363, 364(c) and (d) and were otherwise sufficient and appropriate under the circumstances.

**WHEREFORE, IT IS HEREBY ORDERED ON A FINAL BASIS:**

1. <u>Authorization to Use Cash Collateral</u>. Debtor is authorized to use Cash Collateral solely in accordance with the terms and provisions of this Order, to the extent required to pay when due those expenses enumerated in the Budget subject to the Permitted Variance, including the Carveout, and to pay Allowable 506(b) Amounts. The aggregate amount of Cash Collateral authorized by this Order will not exceed the amounts set forth in the Budget plus the Allowable 506(b) Amounts.

2. <u>Procedure for Use of Cash Collateral</u>.

(a) <u>Delivery of Cash Collateral to Postpetition Agent</u>. Debtor shall deposit all Cash Collateral now or hereafter in their possession or control into the Blocked Account promptly upon receipt thereof, so long as no Event of Default then exists and this Order is in full force and effect, Prepetition Senior Agent shall authorize Debtor to use Cash Collateral

-5-

to fund Budget expenses and make payments on account of the Prepetition Senior Debt, subject to the terms and conditions of this Order.

        (b)    [Reserved.]

        (c)    Cash Collateral in Third Party's Possession. Debtor shall cause all depository banks (the "Other Banks") at which Debtor maintains a deposit account to remit the available balance in such accounts to the Blocked Accounts on a daily basis, subject to any valid and enforceable rights of setoff or other secured claims in favor of the Other Banks as of the Filing Date.

        (d)    Application of Cash Collateral. Subject to the Permitted Variance, Prepetition Senior Agent, at its election, is authorized to apply all Cash Collateral now or hereafter in Prepetition Senior Agent's or any Prepetition Senior Lender's possession or control as follows: (1) first, to the payment of Prepetition Revolver Debt, if any, (2) second, to the payment of Prepetition Senior Debt consisting of Allowable 506(b) Amounts; and (3) third, to the payment of all other Prepetition Senior Debt in accordance with the Prepetition Senior Documents. All such applications to Prepetition Debt shall be final, subject only to the right of parties in interest to seek a determination in accordance with Paragraph 8 below that such applications to other Prepetition Senior Debt resulted in the payment of any unsecured prepetition claim of Prepetition Senior Agents and Prepetition Senior Lenders.

        (e)    Prohibition Against Use of Cash Collateral. Except as provided for in this Order, including in respect of the Carveout, Debtor will not use or seek to use Cash Collateral, unless, in addition to the satisfaction of all requirements of Code § 363, Senior Agents have consented to such order.

    3.    Supplemental Adequate Protection Pending Adjourned Hearing to Authorize Postpetition Debt and Ongoing Covenants.

        (a)    Prepetition Covenants and Postpetition Ongoing Covenants. The hearing on the Motion with respect to the request to authorize the Debtor to incur Postpetition Debt pursuant to Code § 364 is hereby adjourned to October 15, 2015 at 2:00 p.m. Eastern Time;

provided, however, as further adequate protection of Prepetition Senior Agent and Prepetition Senior Lenders' rights, Debtor shall continue to perform the affirmative covenants set forth in the Prepetition Senior Credit Agreement (including all insurance covenants) and be bound by the covenants set forth in Sections 4.1, 4.2, 4.6, 4.8, 4.14, 5.17, 6.1 of the Postpetition Credit Agreement and all other provisions and definitions related thereto, as well as the defined term "Event of Default" as used herein (collectively, the "Ongoing Covenants") provided that the Milestones (as defined in the Postpetition Credit Agreement) will be deemed amended and extended as agreed to by Prepetition Senior Agent and the Debtor and announced in Court. All financial reporting provided to Prepetition Senior Agent pursuant to the Ongoing Covenants will be provided by the Debtor to the Committee and Prepetition Junior Agent. The Ongoing Covenants shall constitute valid and binding obligations of Debtor enforceable in accordance with their terms. All deposit account control agreements in effect as of the Filing Date shall remain in full force and effect notwithstanding the entry of this Order and any subsequent orders amending this Order.

(b)    Prohibition Against Additional Debt. Debtor will not incur or seek to incur debt secured by a lien which is equal to or superior to the Prepetition Senior Liens, or which is given superpriority administrative expense status under Code § 364(c)(1), unless, in addition to the satisfaction of all requirements of Code § 364 Prepetition Senior Agent has consented to such order.

(c)    Prepetition Subordination Agreement. The Prepetition Subordination Agreement shall remain in full force and effect with respect to all Aggregate Debt as "Senior Debt" (as defined in the Prepetition Subordination Agreement) subject only to the terms of this Order.

4.    Adequate Protection of Interests of Prepetition Agents and Prepetition Lenders in the Prepetition Collateral and the Prepetition Liens. Prepetition Agents and Prepetition Lenders have consented to, or has been deemed to have consented to, the terms of this Order and are entitled to adequate protection as set forth herein and to the extent required under Code §§ 361, 362, or 363 (including for any decrease in the value of such interests in the

Prepetition Collateral from and after the Filing Date). Subject to the terms of Paragraph 8 of this Order:

(a) <u>Priority of Prepetition Liens/Allowance of Prepetition Lenders' Claim</u>. (1) the Prepetition Senior Liens shall constitute Priority Liens, subject only to the Permitted Priority Liens; (2) the Prepetition Junior Liens shall constitute Priority Liens, subject only to the Permitted Priority Liens, Prepetition Senior Liens and Postpetition Liens; (3) the Prepetition Senior Debt constitutes the legal, valid and binding obligation of Debtor, enforceable in accordance with the terms of the Prepetition Senior Documents; (4) the Prepetition Junior Debt constitutes the legal, valid and binding obligation of Debtor, enforceable in accordance with the terms of the Prepetition Junior Documents; (5) no offsets, defenses or counterclaims to the Prepetition Senior Debt exist, and no portion of the Prepetition Senior Debt is subject to avoidance, recharacterization or subordination pursuant to the Code or applicable nonbankruptcy law; (6) no offsets, defenses or counterclaims to the Prepetition Junior Debt exist, and no portion of the Prepetition Junior Debt is subject to avoidance, recharacterization or subordination pursuant to the Code or applicable nonbankruptcy law; (7) the Prepetition Senior Debt shall be an allowed claim in an amount not less than $33,918,000, exclusive of accrued and accruing Allowable 506(b) Amounts and, provided that the Court authorizes the closings of the sales of the Debtor's businesses for purchase price proceeds (or reduction of secured debt) in excess of $30,000,000, Prepetition Senior Agent's and Prepetition Senior Lenders' claim with respect to the Prepetition Senior Debt shall for all purposes constitute an allowed secured claim within the meaning of Code § 506 in an amount not less than $30,000,000, exclusive of accrued and accruing Allowable 506(b) Amounts and (8) Prepetition Junior Agent's and Prepetition Junior Lenders' claim with respect to the Prepetition Junior Debt shall for all purposes constitute an allowed claim within the meaning of Code § 506 in an amount not less than $28,660,610.78.

(b) <u>Senior Replacement Liens</u>. Prepetition Senior Agent is hereby granted the Senior Replacement Liens, for the benefit of Prepetition Senior Lenders, as security for payment of the Prepetition Senior Debt. The Senior Replacement Liens: (1) are and shall be in addition to the Prepetition Senior Liens; (2) are and shall be properly perfected, valid and enforceable liens without any further action by Debtor or Prepetition Senior Agent and without the execution, filing or recordation of any financing statements, security agreements, mortgages

-8-

or other documents or instruments; (3) shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the Case, (4) shall be junior to the Prepetition Senior Liens, Senior Replacement Liens pursuant to the Prepetition Subordination Agreement and this Order and (5) shall not, absent further order of this Court, include any Chapter 5 causes of action or proceeds thereof. Notwithstanding the foregoing, Debtor is authorized to and shall execute and deliver to Prepetition Senior Agent such financing statements, mortgages, instruments and other documents as Prepetition Senior Agent may request from time to time in respect of the Senior Replacement Liens.

(c) <u>Junior Replacement Liens</u>. Prepetition Junior Agent is hereby granted the Junior Replacement Liens, for the benefit of Prepetition Junior Lenders, as security for payment of the Prepetition Junior Debt. The Junior Replacement Liens: (1) are and shall be in addition to the Prepetition Junior Liens; (2) are and shall be properly perfected, valid and enforceable liens without any further action by Debtor or Prepetition Junior Agent and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instruments; (3) shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the Case, (4) shall be subject to the Prepetition Subordination Agreement and (5) shall not, absent further order of this Court, include any Chapter 5 causes of action or proceeds thereof. Notwithstanding the foregoing, Debtor is authorized to and shall execute and deliver to Prepetition Junior Agent such financing statements, mortgages, instruments and other documents as Prepetition Junior Agent may request from time to time in respect of the Junior Replacement Liens.

(d) <u>Allowed Senior Code § 507(b) Claim</u>. Subject to the Prepetition Subordination Agreement, if and to the extent the adequate protection of the interests of Prepetition Senior Agent and Prepetition Senior Lenders in the Prepetition Collateral granted pursuant to this Order proves insufficient, Prepetition Senior Agent and Prepetition Senior Lenders shall have an allowed claim under Code § 507(b), subject to the Carveout, in the amount of any such insufficiency, with priority over: (1) all costs and expenses of administration of the Case that are incurred under any provision of the Code; and (2) the claims of any other party in interest under Code § 507(b) (including, without limitation the Prepetition Junior Agent and

Prepetition Junior Lenders), provided that any allowed claim under Code § 507(b), absent further order of this Court, would not be asserted against Chapter 5 causes of action or proceeds thereof.

(e)    <u>Allowed Junior Code § 507(b) Claim</u>.  Subject to the Prepetition Subordination Agreement, if and to the extent the adequate protection of the interests of Prepetition Junior Agent and Prepetition Junior Lenders in the Prepetition Collateral granted pursuant to this Order proves insufficient and Prepetition Senior Agent and Prepetition Senior Lenders have an allowed claim under Code § 507(b), Prepetition Junior Agent and Prepetition Junior Lenders shall also have an allowed claim under Code § 507(b), subject to the Carveout, in the amount of any such insufficiency, with priority over:  (1) all costs and expenses of administration of the Case (other than Postpetition Agent's and Postpetition Lenders' claims under Code § 364) that are incurred under any provision of the Code; and (2) the claims of any other party in interest under Code § 507(b) (other than the Prepetition Senior Agent and Prepetition Senior Lenders), provided that any allowed claim under Code § 507(b), absent further order of this Court, would not be asserted against Chapter 5 causes of action or proceeds thereof.

5.    <u>Termination Date; Rights and Remedies</u>.

(a)    <u>Effect of Termination Date</u>.  The Prepetition Senior Agent shall give written notice to Debtor, and Debtor shall give written notice to the U.S. Trustee and the Committee, of any occurrence of the Termination Date.  Unless extended by the Court upon the written agreement of Prepetition Senior Agent, upon the Termination Date without further notice or order of Court: (1) Debtor's authorization to use Cash Collateral hereunder will automatically terminate; and (2) at Prepetition Senior Agent's election, Debtor shall be prohibited from using Cash Collateral for any purpose other than application to the Aggregate Debt in accordance with Paragraph 3(b) of this Order and funding the Carveout Account in accordance with Paragraph 6 of this Order and (iii) Prepetition Senior Agent shall be entitled to setoff any cash in any Prepetition Senior Lender's possession or control and apply such cash to the Aggregate Debt in accordance with Paragraph 3(b) of this Order.

(b)    [Reserved].

6.    <u>Carveout</u>.

-10-

(a) The Prepetition Senior Liens, the Priority Liens, the Permitted Priority Liens and the Prepetition Junior Liens (collectively, the "Lender Liens") shall be subject to the right of payment of the following expenses (collectively, the "Carveout"):

(i) all fees required to be paid to the clerk of the Court and to the Office of the United States Trustee under 28 U.S.C. § 1930(a) plus interest pursuant to 31 U.S.C. § 3717 (the "Statutory Fees"), in each case accruing or required to be paid prior to the Termination Date;

(ii) all reasonable fees and expenses incurred by a trustee appointed under Section 726(b) of the Bankruptcy Code in an amount not to exceed $50,000;

(iii) to the extent allowed at any time by the Court, but subject in all respects to the aggregate amounts set forth in the Budget for each applicable time period, all accrued and unpaid fees, disbursements, costs and expenses incurred by professionals or professional firms retained by Debtor and the Committee prior to the first Business Day following delivery by the Prepetition Senior Agent of a Carveout Trigger Notice (as defined below); and

(iv) to the extent allowed at any time by the Court, but subject in all respects to the Budget, all accrued and unpaid fees, disbursements, costs and expenses incurred by professionals or professionals firms retained by Debtor and the Committee at any time after the first Business Day following delivery of the Prepetition Senior Agent of the Carveout Trigger Notice in an aggregate amount not to exceed $75,000 (the amount set forth in this clause (a)(iv) being the "Post Carveout Trigger Notice Cap").  For purposes of the foregoing, "Carveout Trigger Notice" shall mean a written notice delivered by the Prepetition Senior Agent to Debtor and its counsel, the U.S. Trustee and counsel to the Committee, which notice may delivered following the occurrence of and during the continuance of an Event of Default, and stating that the Post Carveout Trigger Notice Cap has been invoked.  Notwithstanding anything to the contrary contained in this Order or the Interim Order, the Carveout shall be senior to the Lender Liens, and all forms of adequate protection, Liens, security interests and other claims granted pursuant to this Order.

(b) Debtor shall maintain an account which shall be funded in the aggregate amount not to exceed the aggregate amount for Carveout Professional to the extent set

-11-

forth in the Budget, which shall be used exclusively for the payment of the Carveout (the "Carveout Account"), which account shall be funded in the amounts and on the dates set forth in the Budget from (i) collections of cash collateral or (ii) proceeds of sales of Aggregate Collateral. Subject to the Budget and further orders of this Court approving payment of professional fees and expenses, Debtor shall pay the Carveout compensation and reimbursement of expenses that accrue after the Petition Date in compliance with the provisions of this Paragraph 6 as the same may become due and payable; provided, however, that, prior to the delivery of a Carveout Trigger Notice, Debtor shall pay Carveout compensation and reimbursement of expenses first by the application by the applicable professional of any retainer then held, and second from the Carveout Account. Payment of professional compensation and reimbursement of expenses shall reduce the amount of the Carveout Account dollar-for-dollar. No amounts may be paid for professionals compensation and expense reimbursement from the Carveout Account in respect of services rendered after the delivery of the Carveout Trigger Notice. After payment in full of permitted Carveout compensation and reimbursement of expenses in compliance and subject to the provisions of this Paragraph 6, any excess amounts in the Carveout Account shall be remitted to the Prepetition Senior Agent to be applied in accordance with the terms of this Order. Provided that once the amounts the Prepetition Senior Agent is obligated to allocate to the Carve-out as required in this paragraph 6 have been funded in accordance herewith, all obligations of the Prepetition Senior Agent and the Prepetition Senior Lenders with respect to the Carveout shall be terminated.

(c)     Payment of any amounts on account of the Carveout, whether by or on behalf of the Prepetition Senior Agent or the Prepetition Senior Lenders, shall not reduce the Aggregate Debt, and shall not subordinate any of the Prepetition Senior Agent's and the Prepetition Senior Lenders' liens and security interests in the Aggregate Collateral or their superpriority claims to any junior pre-or post-petition Lien, interest or claim in favor of any other party. The Prepetition Senior Agent and the Prepetition Senior Lenders shall not, under any circumstances, be responsible for the direct payment or reimbursement of any fees or disbursements of any professionals retained by Debtor or the Committee incurred in connection with the Chapter 11 Case under any chapter of the Bankruptcy Code.

(d) <u>Carveout Usage</u>.  No portion of the Carveout and no Aggregate Collateral may be used to pay any fees or expenses incurred by any entity, including Debtor, any Committee or the Carveout Professionals, in connection with claims or causes of action adverse to Senior Agents' or Senior Lenders' interests in the Aggregate Collateral, including (1) preventing, hindering or delaying Senior Agents' or Senior Lenders' enforcement or realization upon any of the Aggregate Collateral once an Event of Default has occurred; (2) using or seeking to use Cash Collateral or incurring indebtedness in violation of the terms hereof, or selling any Aggregate Collateral without Senior Agents' and Senior Lenders' consent; or (3) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, amount, perfection, priority or enforceability of the Aggregate Debt or any mortgages, liens or security interests with respect thereto or any other rights or interests of Senior Agents and Senior Lenders, or in asserting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Code, against Senior Agents or Senior Lenders; <u>provided</u>, <u>however</u>, that the foregoing shall not apply to costs and expenses, in an amount not to exceed $50,000, incurred by the Committee's professionals in connection with the investigation of a potential Challenge in accordance with Paragraph 8 of this Order; <u>provided</u>, <u>further</u>, <u>however</u>, that the Carveout may be used to pay fees and expenses incurred by the Carveout Professionals in connection with the negotiation, preparation and entry of this Order or any amendment hereto consented to by Prepetition Senior Agent.  Senior Agents' and Senior Lenders' agreement to the Carveout provisions herein shall be automatically rescinded if Debtor challenges or attempts to affect (by action, proceeding or otherwise) the validity, priority or extent of the Prepetition Senior Liens, or Senior Replacement Liens.

(e) <u>Carveout Procedure</u>.  Debtor shall periodically, upon the request of the Prepetition Senior Agent, provide to the Prepetition Senior Agent a written report (the "<u>Carveout Report</u>"), in which Debtor discloses its then current estimate of (1) the aggregate amount of unpaid professional fees, costs and expenses accrued or incurred by the Carveout Professionals, through the date of the Carveout Report, and (2) projected fees, costs and expenses of the Carveout Professionals for the 30 day period following the date of such Carveout Report.  Nothing herein shall be construed as consent by Senior Agents and Senior Lenders to the allowance of any fees or expenses of the Carveout Professionals or shall affect the right of Senior

-13-

Agents or any Senior Lender to object to the allowance and payment of such fees, costs or expenses, or the right of Senior Agents or any Senior Lender to the return of any portion of the Carveout that is funded with respect to fees and expenses for a Carveout Professional that are approved on an interim basis that are later denied on a final basis.

> 7. <u>No Surcharge for Carveout Professionals; 506(c) Waiver</u>.
>
> (a) In exchange for the payment of the Carveout in accordance with the terms of this Order and with the consent and agreement of the Carveout Professionals and Debtor (and any Trustee), other than the Carveout there shall be no surcharge of the Aggregate Collateral to enable the payment of administrative expenses incurred by or for the benefit of the Carveout Professionals; whether under Code § 506(c), 552(b) or otherwise, for services rendered by the Carveout Professionals through the closings of the Debtor's proposed sales of the Aggregate Collateral.
>
> (b) The amounts, if any, of any other administrative expenses that a trustee may recover under Code § 506(c) shall be recoverable solely from the specific property (or the proceeds of such property) for which the subject costs and expenses have in fact been incurred.
>
> (c) The amounts, if any, recovered from the Collateral pursuant to § 506(c) or deemed to not be Aggregate Collateral pursuant to § 552(b) may only be recovered by Debtor (or any Trustee) and will be preserved generally for the benefit of the estate and applied in strict accordance with the priorities of administrative expenses and claims pursuant to the terms of the Code and this Order.
>
> (d) Solely effective upon further order of Court, Debtor (and any Trustee) will be deemed to have waived, any rights, benefits or claims under Code § 506(c) the enhancement of collateral

-14-

provisions of Code § 552, or any other legal or equitable doctrine (including, without limitation, unjust enrichment) as they may relate to or be asserted against the Senior Agents, the Senior Lenders or the Aggregate Collateral.

8. <u>Reservation of Rights; Bar of Challenges and Claims</u>. The stipulations and representations contained in this Order, including, without limitation, in Paragraph E, shall be binding on all Challenge Parties, unless and solely to the extent that (i) Debtor receives notice of a potential Challenge during the Investigation Period from any Challenge Party and (ii) the Court rules in favor of the plaintiff in any such timely and properly filed Challenge.

(a) <u>Challenge Procedure</u>. During the Investigation Period, a Challenge Party shall be entitled to determine whether a basis to assert a Challenge exists. If a Challenge Party identifies a basis to assert a Challenge, it must notify Debtor during the Investigation Period of its demand that Debtor initiate an action or adversary proceeding relating thereto and from the date that Debtor is so notified, Debtor shall have the longer of two business days or three calendar days to notify the Challenge Party of whether Debtor intends to initiate such action. If within such two calendar day or three business day period, as applicable, Debtor notifies such Challenge Party that Debtor does not intend to initiate an action or adversary proceeding, the Challenge Party shall have ten (10) days from the receipt of such notice to initiate a motion on an expedited basis seeking derivative standing (and the Debtors, Prepetition Senior Agent and Prepetition Junior Agent agree not to oppose such expedited relief); provided, further, however, the filing of any such motion prior to the expiration of the challenge deadline shall extend the Investigation Period as ordered by the Court for the date of the filing of such complaint at any hearing on such motion in respect of the matters asserted in such motion. Nothing herein shall be deemed to grant standing in favor of any Challenge Party absent further order of this Court. Debtor, if timely notified of a potential Challenge, shall retain authority to prosecute, settle or compromise such Challenge in the exercise of its business judgment and subject to any applicable further order of court.

(b) <u>Bar of Challenges and Claims</u>. If Debtor does not receive notice of a potential Challenge during the Investigation Period (or such later date as agreed in writing by

-15-

Prepetition Senior Agent and Prepetition Senior Lenders, solely with respect to a potential Challenge against such party, or for cause shown by an order of this Court), without further order of the Court, the claims, liens and security interests of the Prepetition Senior Agent and the Prepetition Senior Lenders shall be deemed to be allowed for all purposes in these Case and shall not be subject to challenge by any party in interest as to extent, validity, priority or otherwise.

(c) <u>Limitation on Use of Cash Collateral and Postpetition Collateral</u>. Notwithstanding anything herein or in any other order by this Court to the contrary, no proceeds of Cash Collateral may be used to pay any allowed administrative claims and expenses of the Case or in connection with a Challenge:

(i) preventing, hindering or otherwise delaying the Prepetition Senior Agent's or the Prepetition Senior Lenders' assertion, enforcement or realization on the Postpetition Collateral once an Event of Default has occurred and is continuing, the Interim Order or this Order; provided, however, that Debtor and the Committee may contest in good faith whether an Event of Default has occurred;

(ii) seeking to modify the rights granted to the Senior Agents or Senior Lenders hereunder or the Ongoing Covenants or the Prepetition Senior Documents, in each of the foregoing cases, without such parties' prior written consent;

(iii) paying any amount on account of any claims arising prior to the Filing Date unless such payments are (1) approved by an order of this Court and (2) in accordance with the Budget,

(iv) using or seeking to use Cash Collateral except to the extent permitted hereunder,

-16-

      (v) selling or otherwise disposing of the Postpetition Collateral or otherwise with the consent of the Prepetition Senior Agent, or

      (vi) using or seeking to use any insurance proceeds related to the Postpetition Collateral, except as permitted with the consent of the Prepetition Senior Agent.

  9. <u>Right to Accept Non-Cash Consideration and Credit Bid</u>.  In connection with the sale or other disposition of all or any portion of the Aggregate Collateral, whether under Code § 363, Code § 1129 or otherwise, (a) Senior Agents may consent to non-cash consideration in the form of assumption of all or any portion of the Aggregate Debt by any purchaser and (b) Senior Agents shall have the right to use the Aggregate Debt or any part thereof to offset against the purchase price or otherwise "credit bid" with respect to such Aggregate Collateral.

  10. <u>Reserved</u>.

  11. <u>Application of Sale Proceeds</u>.  Without prejudice to any Challenges under Paragraph 8, all proceeds from sales or other dispositions of all or any portion of the Aggregate Collateral, net of the Carveout, other than sales or dispositions in the ordinary course shall be remitted to Senior Agents for application in accordance with Paragraph 2(d) of this Order.

  12. <u>Waiver of Right to Return/Consent to Setoff</u>.  Debtor hereby waives its rights: (a) to return any of the Aggregate Collateral pursuant to Code § 546(h); (b) to consent to setoff pursuant to Code § 553.

  13. <u>Indemnification</u>.  Debtor shall indemnify and hold harmless Prepetition Senior Agent and Prepetition Senior Lenders in accordance with the Prepetition Senior Credit Agreement.  Without limiting the generality of the foregoing, Debtor shall indemnify and hold harmless (a) Prepetition Senior Agent and Prepetition Senior Lenders in accordance with the Prepetition Senior Credit Agreement and (b) Prepetition Junior Agent and Prepetition Junior Lenders in accordance with the Prepetition Junior Credit Agreement.

14.     <u>No Marshaling; No Abandonment to Senior Agents or Senior Lenders</u>.  No Senior Agent, Senior Lender or any of the Aggregate Collateral shall be subject to the doctrine of marshaling.  Debtor may not seek to abandon any Aggregate Collateral into the possession or control of Prepetition Senior Lenders, Postpetition Lenders, Prepetition Senior Agent or Postpetition Agent without the prior written consent of Senior Agents.  Nothing in this Section will be deemed to limit or prejudice Debtor's right to abandon pursuant to Code § 554.

15.     <u>Reserved</u>.

16.     <u>Force and Effect of Prepetition Documents and Postpetition Documents</u>.  To the extent there exists any conflict among the terms of the Motion, the Prepetition Senior Documents and this Order, this Order shall govern and control.  Except as modified herein and subject to the other provisions of this Order and the Code, the Prepetition Junior Documents shall remain in full force and effect with respect to the Prepetition Junior Debt.  To the extent there exists any conflict among the terms of the Motion, the Prepetition Junior Documents and this Order, this Order shall govern and control.  To the extent there exists any conflict among the terms of the Motion, the Postpetition Documents, the Interim Order and this Order, this Order shall govern and control.

17.     <u>Modification of Stay</u>.  The automatic stay of Code § 362 is hereby modified with respect to Senior Agents and Senior Lenders to the extent necessary to effectuate the provisions of this Order.

18.     <u>No Waiver</u>.  Senior Agents and Senior Lenders shall not be deemed to have suspended or waived any of their rights or remedies under this Order, the Prepetition Senior Documents, the Postpetition Documents, the Interim Order, the Code, and applicable nonbankruptcy law unless such suspension or waiver is in writing, signed by a duly authorized officer of Senior Agents or the Senior Lenders, as applicable, and directed to Debtor.  No failure of Senior Agents or Senior Lenders to require strict performance by Debtor (or by any Trustee) of any provision of this Order shall waive, affect or diminish any right of Senior Agents or Senior Lenders thereafter to demand strict compliance and performance therewith, and no delay on the part of Senior Agents or Senior Lenders in the exercise of any right or remedy under this Order,

the Prepetition Senior Documents, the Postpetition Documents, the Interim Order, the Code, or applicable nonbankruptcy law shall preclude the exercise of any right or remedy. Further, this Order shall not constitute a waiver by Prepetition Senior Agent or the Prepetition Senior Lenders of any of their rights under the Prepetition Senior Documents, the Code or applicable nonbankruptcy law, including, without limitation their right to later assert: (1) that, any of their interests in the Aggregate Collateral lack adequate protection within the meaning of Code §§ 362(d) or 363(e) or any other provision thereof; or (2) a claim under Code § 507(b).

19.   "Responsible Person."  By taking any actions pursuant to this Order or the Interim Order, Senior Agents and Senior Lenders shall not: (a) be deemed to be in control of the operations or liquidation of Debtor; or (b) be deemed to be acting as a "responsible person" with respect to the operation, management or liquidation of Debtor.

20.   Reserved.

21.   Amendments.  On not less than three (3) Business Days' notice to the Committee and the Trustee, Debtor, and Prepetition Senior Agent may enter into amendments or modifications of the Budget without further notice and hearing or order of this Court; provided, that (a) such modifications or amendments do not materially and adversely affect the rights of any creditor or other party-in-interest and (b) notice of any such amendment or modification is filed with this Court.

22.   Proof of Claim.  Neither the Prepetition Agents nor any of the Prepetition Lenders shall be required to file a proof of claim with respect to any of the Prepetition Debt and the stipulations and findings set forth in this Order shall constitute an informal proof of claim in respect thereof.  Notwithstanding the foregoing or any subsequent order of Court concerning proof of claim filing requirements, Prepetition Senior Agent is authorized (but not obligated) to file a single proof of claim in this Case on behalf of itself and the Prepetition Senior Lenders on account of their claims arising under the Prepetition Senior Documents.

23.   Binding Effect.  Except as provided in Paragraph 8 herein, this Order shall be binding on all parties in interest in the Case and their respective successors and assigns, including any Trustee, except that any Trustee shall have the right to terminate this Order after

notice and a hearing. If, in accordance with Code § 364(e), this Order does not become a final nonappealable order, if a Trustee terminates this Order, or if any of the provisions of the Order are hereafter modified, amended, vacated or stayed by subsequent order of this Court or any other court, such termination or subsequent order shall not affect: (a) subject to Paragraph 8 of this Order, the stipulations, representations, and findings contained in this Order and the relief granted by and the releases contained in this Order; and (b) the priority, validity, enforceability or effectiveness of any lien, security interest or other benefit or claim authorized hereby with respect to Cash Collateral used prior to the effective date of such termination or subsequent order. All such liens, security interests, claims and other benefits shall be governed in all respects by the original provisions of this Order, and Postpetition Agent and Postpetition Lenders shall be entitled to all the rights, remedies, privileges and benefits granted hereto. Except as otherwise explicitly set forth in this Order, no third party is intended to be, or shall be deemed to be, a third party beneficiary of this Order.

24. <u>Previously Incurred Postpetition Debt</u>. All Postpetition Debt allowed and incurred under the Interim Order shall be deemed to be Postpetition Debt for all purposes under this Order and shall be entitled to the priority and other protections set forth herein.

25. <u>Survival</u>. The provisions of this Order, and any actions taken pursuant to or in reliance upon the terms hereof, shall survive entry of, and govern in the event of any conflict with, any order which may be entered in the Case: (a) confirming any chapter 11 plan, (b) converting the Case to a case under chapter 7 of the Code, (c) dismissing the Case, (d) withdrawing of the reference of the Case from this Court, or (e) providing for abstention from handling or retaining of jurisdiction of the Case in this Court. The terms and provisions of this Order shall continue in full force and effect until all of the Aggregate Debt is indefeasibly paid in full in cash and discharged.

###