So Ordered.

Signed this 11 day of September,

_____

Margaret Cangilos-Ruiz

United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

In re                                              Chapter 11

COYNE INTERNATIONAL ENTERPRISES         Case No. 15-31160-5-mcr
CORP.,

        Debtor.[1]
------------------------------------------------------------x

**ORDER APPROVING AND AUTHORIZING (A) BIDDING
PROCEDURES IN CONNECTION WITH THE SALE OF SUBSTANTIALLY
ALL OF THE DEBTOR'S ASSETS, (B) STALKING HORSE BID PROTECTIONS,
(C) PROCEDURES FOR ASSUMPTION AND ASSIGNMENT OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES, (D) FORM AND MANNER
OF NOTICE OF THE SALE HEARING, AND (E) RELATED RELIEF**

Upon the portion of the motion (the "**Motion**")[2] of Coyne International Enterprises Corp.,

as debtor and debtor-in-possession (the "**Debtor**"), for entry of an order approving and authorizing

(a) bidding procedures, including stalking horse bidder protections, in connection with the receipt

and analysis of competing bids for the Acquired Assets of the Debtor, (b) procedures for the

---

[1] The last four numbers of the Debtor's taxpayer identification number are 0758. The Debtor's address is 140 Cortland Avenue, Syracuse, New York 13202.

[2] All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Motion or in the Bidding Procedures attached hereto as Exhibit "1."

assumption and assignment of executory contracts and unexpired leases in connection with the Sale, (c) approving the form and manner of notice of the Sale and scheduling the sale hearing and setting related dates and deadlines, and (d) other related relief, pursuant to sections 105(a), 363, 365 and, if applicable, 1146(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2002-1, 6004-1, 6004-2 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Northern District of New York (the "**Local Rules**"); and this Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, that the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having held a hearing on September 9, 2015 (the "**Bidding Procedures Hearing**"); and this Court having reviewed the Motion and the exhibits thereto and the arguments of counsel made and the evidence proffered or adduced, as applicable, at the Bidding Procedures Hearing; and this Court having determined that the legal and factual bases set forth in the Motion and at the Bidding Procedures Hearing establish just cause for the relief granted herein; and this Court having found that the relief requested in the Motion is in the best interests of the Debtor's estate, its creditors and other parties in interest; and this Court having found the form and manner of notice of the Bidding Procedures Hearing is good, sufficient and appropriate under the circumstances and that no other or further notice need be provided or is necessary; and after due deliberation and sufficient cause appearing therefor, this Court

FINDS AND DETERMINES THAT:

**A.     Bidding Procedures.**  The Debtor has articulated good and sufficient reasons for authorizing and approving the Bidding Procedures attached as **Exhibit 1** hereto (the "**Bidding**

2

**Procedures**"), which are fair, reasonable and appropriate under the circumstances and designed to maximize the recovery on, and realizable value of, the Acquired Assets.

      **B.**      **Stalking Horse Bid Protections.** The Debtor has demonstrated a compelling and sound business justification for authorizing the payment of the breakup fees requested by Clean Rentals, Inc. d/b/a Clean Uniforms and More! ("**Clean**") and by Prudential Overall Supply, Inc. ("**Prudential**"), as Stalking Horse Bidders, in the amount of $100,000 and $200,000 respectively (each a "**Breakup Fee**"), under the circumstances, including, without limitation, that:

    i.    each of the Breakup Fees is the product of negotiations among the Debtor and Clean and Prudential, respectively, conducted in good faith and at arm's-length, and each of the Clean APA and the Prudential APA (including the respective Breakup Fees) is the culmination of a process undertaken by the Debtor and its professionals to negotiate a transaction with a bidder who was prepared to pay the highest and otherwise best purchase price to date for the Acquired Assets in order to maximize the value of the Debtor's estate;

    ii.    each of the Breakup Fees is an actual and necessary cost and expense of preserving the Debtor's estate;

    iii.    each of the Breakup Fees is fair, reasonable and appropriate in light of, among other things, the size and nature of the proposed Sale under the respective Clean APA and the Prudential APA, the substantial efforts that have been and will be expended by, respectively, Clean and Prudential, notwithstanding that the proposed sale is subject to higher or better offers, and the substantial benefits Clean and Prudential, as two of the Stalking Horse Bidders, have provided to the Debtor, its estate and creditors and all parties in interest herein, including, among other things, by increasing the likelihood that the best possible price for the Acquired Assets will be received;

    iv.    the protections afforded to Clean and Prudential by way of the Breakup Fees were material inducements for, and express conditions of, Clean's and Prudential's respective willingness to enter into the applicable APAs, and were necessary to ensure that Clean and Prudential, respectively, would continue to pursue the proposed acquisition on terms acceptable to the Debtor in its sound business judgment, subject to competitive bidding; and

    v.    the assurance of the payment of the respective Breakup Fees has (A) promoted more competitive bidding by inducing Clean and Prudential to enter into their respective APAs, which otherwise would not have been

        made, without which competitive bidding would be limited, and which may be the highest and best available offer for the Acquired Assets, and (B) induced Clean and Prudential to conduct due diligence with respect to the Debtor's business, assets, operations and liabilities and to propose the Sale contemplated by the Clean APA and the Prudential APA, including, among other things, submission of a bid that will serve as a minimum or floor bid on which all other bidders can rely and increases the likelihood that the final purchase price reflects the true value of the Acquired Assets.

    **C.**    **Assumption Procedures.** The Motion and the Assumption and Assignment Notice (annexed hereto as **Exhibit 2**), are reasonably calculated to provide counterparties to the Assumed Contracts with proper notice of the intended assumption and assignment of their executory contracts or unexpired leases, any Cure Amounts relating thereto and the Assumption Procedures.

    **D.**    **Sale Notice.** The Sale Notice is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale, including, without limitation: (i) the date, time and place of the Auction (if one is held); (ii) the Bidding Procedures and the dates and deadlines related thereto; (iii) the objection deadline for the Motion and the date, time and place of the Sale Hearing; (iv) reasonably specific identification of the Acquired Assets; (v) instructions for promptly obtaining a copy of the applicable APA; (vi) representations describing the Sale as being free and clear of liens, claims, interests and other encumbrances (other than Assumed Liabilities and Permitted Liens), with all such liens, claims, interests and other encumbrances attaching with the same validity and priority to the sale proceeds, (vii) the commitment by each of the Stalking Horse Bidders to assume the Assumed Liabilities to the extent required by its respective APA; and (viii) notice of the proposed assumption and assignment of contracts and leases to the Stalking Horse Bidders pursuant to the applicable APAs (or to another Successful Bidder arising from the Auction, if any), the proposed Cure Amounts (as defined below) relating thereto and the right, procedures and deadlines for objecting thereto, and no other or further notice of the Sale shall be required.

4

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:

1. The Motion is granted as provided herein.

## I. Important Dates and Deadlines

2. **Sale Hearing.** October 29, 2015, at 11:00 a.m. prevailing Eastern Time, is the date and time the sale hearing (the "**Sale Hearing**") will be held before the Honorable Cangilos-Ruiz, Bankruptcy Judge of the United States Bankruptcy Court for the Northern District of New York, at James Hanley Federal Building, 100 South Clinton Street, Syracuse, New York. Any obligations of the Debtor set forth in the respective APAs that are intended to be performed prior to the Sale Hearing and/or entry of the respective Sale Orders pursuant to the respective APAs are authorized as set forth herein and are fully enforceable as of the date of entry of this order. Please take notice that the Sale Hearing (or any portion thereof) may be adjourned by this Court or the Debtor from time to time without further notice other than by announcement in open court or on this Court's calendar.

3. **Sale Objection Deadline.** October 19, 2015 at 12:00 p.m. prevailing Eastern Time, is the deadline to object to entry of the proposed Sale Order (the "**Sale Objection Deadline**"); *provided*, that such deadline may be extended by the Court or by agreement of the Debtor, the Committee, the affected objecting party, and the affected Stalking Horse Bidder, with approval of the Court. Except for objections to the conduct of the Auction and the determination of highest and otherwise best bids, which may be raised at the Sale Hearing, objections, if any, **must**: (i) be in writing; (ii) conform to the provisions of the applicable Bankruptcy Rules and the applicable Local Rules; (iii) state with particularity the legal and factual basis for the objection; and (iv) be filed with this Court no later than the Sale Objection Deadline, which will cause electronic service via CM/ECF upon the following parties (the "**Notice Parties**"):

| **Debtor** | **Counsel to Debtor** |
|---|---|
| Coyne International Enterprises Corp.<br>140 Cortland Ave.<br>Syracuse, NY 13221<br>Attention: Mark Samson<br>Email: mark.samson@coynetextileservices.com | Herrick, Feinstein, LLP<br>2 Park Avenue<br>New York, NY 10016<br>Attention: Stephen B. Selbst<br>Email: sselbst@herrick.com |
| **Counsel to Clean** | **Counsel to the Creditors' Committee** |
| Paul Plourde<br>50 Exchange Terrace<br>Providence, RI 02903<br>Email: paul@paulplourde.com | Womble Carlyle<br>222 Delaware Avenue, Suite 1501<br>Wilmington, DE 19801<br>Attention: Matthew P. Ward<br>MaWard@wcsr.com |
| **Counsel to NXT** | **Counsel to Medley** |
| Goldberg Kohn Ltd.<br>55 East Monroe, Suite 3300<br>Chicago, IL 60603<br>Attention: Randall Klein<br>Email: randall.klein@goldbergkohn.com | DLA Piper LLP<br>1251 Avenue of the Americas<br>New York, NY 10152<br>Attention: Thomas Califano<br>Email: thomas.califano@dlapiper.com |
| **United States Trustee** | **Counsel to Prudential** |
| Office of the United States Trustee<br>for the Northern District of New York<br>U.S. Courthouse and Federal Building<br>10 Broad Street, Suite 105<br>Utica, NY 13501<br>Attention: Guy A. Van Baalen<br>Email: Guy.A.VanBaalen@usdoj.gov | Pearlman & Tishbi<br>1900 Avenue of the Stars, Suite 310<br>Los Angeles, CA 90067<br>Attention: John Tishbi, Esq.<br>E-mail: jtishbi@ptfirm.com<br><br>Norton Rose Fulbright US LLP<br>555 South Flower Street,<br>Los Angeles, CA 90071<br>Attention: Rebecca J. Winthrop<br>rebecca.winthrop@nortonrosefulbright.com<br><br>Norton Rose Fulbright US LLP<br>666 Fifth Avenue<br>New York, NY 10103-3198<br>Attention: David A. Rosenzweig<br>david.rosenzweig@nortonrosefulbright.com |

| **Counsel to CTS Acquisition, Inc.** | **Counsel to the Examiner** |
|---|---|
| Bond, Schoeneck & King, PLLC<br>One Lincoln Center<br>Syracuse, NY 13202<br>Attention: Stephen A. Donato<br>sdonato@bsk.com | Harris Beach PLLC<br>333 West Washington Street, Suite 200<br>Syracuse, NY 13202<br>Attention: Wendy Kinsella<br>wkinsella@HarrisBeach.com |

**The failure to timely file an objection in accordance with this order shall forever bar the assertion of any objection to the Motion, entry of the Sale Order and/or consummation of the Sale, including the assumption and assignment of contracts and leases to the Successful Bidder pursuant to each of the APAs, or such other APA that may be submitted by the Successful Bidder, and shall be deemed to constitute any such party's consent to entry of the Sale Order and consummation of the Sale and all transactions related thereto.**

4. **Competitive Bidding.** The following dates and deadlines regarding competitive bidding are hereby established (subject to modification as needed):

   a. **Qualified Bid Deadline:** October 23, 2015 at 5:00 p.m. prevailing Eastern Time, is the deadline by which all "Qualified Bids" (as defined in the Bidding Procedures) must be actually received by the parties specified in the Bidding Procedures (the "**Bid Deadline**"); and

   b. **Auction:** October 27, 2015 commencing at 9:00 a.m. prevailing Eastern Time, is the date and time the Auction, if one is needed, will be held at the offices of counsel to the Debtor: Herrick, Feinstein, LLP, 2 Park Avenue, New York, NY 10016.

II. **Bidding Procedures, Assumption Procedures and Related Relief**

   A. **Bidding Procedures**

5. The Bidding Procedures, annexed hereto as **Exhibit 1**, are incorporated herein by this reference as though fully set forth herein, and are hereby approved. The Bidding Procedures shall govern the submission, receipt and analysis of all bids relating to the proposed Sale, and any party desiring to submit a higher and otherwise better offer for the Acquired Assets shall do so strictly in accordance with the terms of the Bidding Procedures and this Order. Notwithstanding any requirements set forth in the Bidding Procedures, each Stalking Horse Bidder is deemed a

7

Qualified Bidder, and each Stalking Horse Bidder's Bid shall be deemed a Qualified Bid, for all applicable purposes under the Bidding Procedures and this Order.

6. Each of the Breakup Fees is hereby approved as set forth in this Order. Notwithstanding any debtor in possession financing orders, cash collateral orders or other orders in this case, the Debtor is authorized and directed to pay any and all amounts owing to Clean and/or Prudential, including the Breakup Fees, without further order of this Court; *provided*, *however*, that the Breakup Fees shall be paid from either (i) proceeds of the sale of the applicable New Bedford Business or the Greenville/Richmond Business, or (ii) from the proceeds of any other assets of the Debtor not otherwise encumbered by any liens or security interests granted to NXT pursuant to those certain debtor in possession interim or final financing orders entered on or before August 31, 2015 in this case, or otherwise held as a prepetition professional fee retainer. Any Qualified Bid for the New Bedford Business, for the Greenville/Richmond Business, or for the All Plants Assets, and any other purchase of the New Bedford Business, of the Greenville/Richmond Business, or of all or a portion of the Assets at the Sale that includes the New Bedford Business or the Greenville/Richmond Business, shall include cash in an amount sufficient to pay in full the Breakup Fees.

7. As described in the Bidding Procedures, if the Debtor does not receive any Qualified Bids other than from the Stalking Horse Bidders or if no Qualified Bidder other than the Stalking Horse Bidders indicates its intent to participate in any of the Auctions in accordance with the Bidding Procedures, the Debtor will not hold the Auction, the Stalking Horse Bidders will be named the Successful Bidders pursuant to their respective APAs, and the Debtor will seek approval of each Stalking Horse Bidder's respective APA at the Sale Hearing. If one or more Qualified Bids is timely received from a Qualified Bidder (other than the Stalking Horse Bidders) in

accordance with the Bidding Procedures, the Debtor shall conduct one or more of the Auctions as set forth in the Bidding Procedures.

8. If the Auction is conducted, each Qualified Bidder participating in the Auction shall be required to confirm that it has not engaged in any collusion with respect to the bidding process or the Sale, the Auction will be conducted openly and shall be transcribed and, at the election of the Debtor, may be videotaped.

### B. Assumption and Assignment Procedures

9. Service of Assumption and Assignment Notice.

(a) As soon as practicable following the entry of this Order, the Debtor shall serve each counterparty with a notice substantially in the form attached hereto as Exhibit 2 (the "**Assumption and Assignment Notice**"), by first class mail on all non-debtor counterparties to Executory Contracts or Leases (as defined below). The Assumption and Assignment Notice will identify each applicable Stalking Horse Bidder, and inform each recipient that the Debtor has agreed to sell its Assets to certain Stalking Horse Bidders pursuant to certain APAs, and that, as part of the Sale, the counterparty's respective Executory Contract or Lease may be either (i) assumed and assigned or (ii) rejected.

(b) No later than three (3) days prior to the Auction, each Stalking Horse Bidder shall designate, by written notice (a "**Rejection Notice**") to the Debtor, which of the Executory Contracts or Leases are to be treated as rejected contracts (the "**Rejected Contracts**"), and by written notice (an "**Assignment Notice**") to the Debtor, which of the Executory Contracts or Leases are to be treated as assigned contracts (the "**Assigned Contracts**"). Additionally, at any time prior to the Effective Closing Date, the Stalking Horse Bidder or, as applicable, the Successful Bidder, may designate any additional Executory Contract or Lease for exclusion from Assigned

9

Contracts by delivering written notice to the Debtor, and in connection with the Effective Closing Date, such Executory Contract or Lease shall be deemed a Rejected Contract under this Order, and the Debtor will be deemed by the Motion to have moved to reject any such Contract as of the Effective Closing Date (and the Effective Closing Date shall constitute the rejection effective date with respect thereto) unless such Executory Contract or Lease had been rejected pursuant to prior order of court.  Notwithstanding anything to the contrary in the Prudential APA, if Prudential is the Successful Bidder for the Greenville/Richmond Business, the date by which Prudential may reject, disclaim, and/or refuse to take ownership of any of the Acquired Assets under Section 2.1 of the Prudential APA shall be any date on or before the Effective Closing Date.

(c) The Assumption and Assignment Notice will also include (x) any "cure" amounts required to be paid pursuant to section 365 of the Bankruptcy Code or the applicable APA (the "**Cure Amounts**") that will apply in the event that the applicable Executory Contract or Lease is to be an Assigned Contract, and (y) any applicable objection deadlines that may be established pursuant to this Order.  For the purpose of this Order, "**Executory Contracts or Leases**" shall mean, collectively, all of the Debtor's executory contracts, customer accounts, customer account agreements, permits and leases, and all "Customer Accounts" (as such term is defined in any of the APAs).

10. Assumption and Assignment Notices in respect of customer contracts shall be redacted in accordance with prior orders of this Court.

11. No later than one day prior to the Sale Hearing, the Debtor will file and serve on each applicable Executory Contract or Lease counterparty:  (a) notice that its Executory Contract or Lease has, as of that date, been determined to be an Assigned Contract; or (b) notice that its Executory Contract or Lease has, as of that date, been determined to be a Rejected Contract.

10

Service of such notice shall be made via email to all email addresses available to the Debtor for the counterparty in its files, and via first class mail to all addresses available to the Debtor for the counterparty in its files.  Pursuant to Bankruptcy Code section 365 and without further notice: (x) the Debtor will be authorized to assume and assign any and all Assigned Contracts listed in clause (a) above as of the Effective Closing Date for each Stalking Horse Bid or, as applicable, each Successful Bid; and (y) subject to Paragraph 9(b) above and Paragraph 15 below, all Rejected Contracts listed in Paragraph 11 (b) above will be deemed rejected as of the Effective Closing Date for the applicable Stalking Horse Bid or, as applicable, the applicable Successful Bid unless otherwise rejected by the Debtor prior to such date.  For purposes of this Order, the "**Effective Closing Date**" shall mean the date on which all conditions to closing are satisfied (or waived) in the manner required by the applicable APA, including, without limitation, payment in full of the purchase price.

12.     Contract Objections and Cure Objection Deadline.  Objections (each a "**Contract Objection**"), if any, to the assumption and assignment of any Executory Contracts or Lease, the adequate assurance of future performance of such Executory Contract or Lease, and the Debtor's proposed Cure Amounts must: (a) be in writing; (b) state with specificity the nature of such objection and alleged cure amount, including applicable and appropriate documentation in support of such alleged cure amount; (c) comply with the Bankruptcy Rules and the Local Rules; (d) be filed with the Court, on or before October 19, 2015 at 5:00 p.m. prevailing Eastern Time (the "**Cure Objection Deadline**"); and (e) be served, so as to be actually received on or before the Cure Objection Deadline, by (i) counsel for the Debtor; (ii) counsel to each Stalking Horse Bidder; (iii) counsel to the Creditors' Committee; and (iv) the Office of the United States Trustee; *provided*, *however*, that if an Auction results in a Successful Bidder other than a Stalking Horse Bidder, as

part of the notice provided by the Debtor pursuant to Paragraph 11, the Debtor will identify such Successful Bidder in a notice and file it with the Court and serve it on each counterparty who was served with the Assumption and Assignment Notice, and the deadline for objecting to the assignment of the Assigned Contracts to such Successful Bidder solely on the basis of adequate assurance of future performance will be at the commencement of the Sale Hearing.

13. <u>Proposed Cure Amount</u>. If a counterparty to an Executory Contract or Lease does not timely and properly file a Contract Objection in the manner set forth above, the Debtor's proposed Cure Amount shall be fixed and shall be paid to the counterparty to the executory contract or unexpired lease to the extent such Executory Contract or Lease is assumed and assigned, and the counterparty shall be deemed to consent to the assumption and assignment of the Executory Contract or Lease. If a counterparty timely and properly files a Contract Objection, then, as set forth in Assumption and Assignment Notice, such counterparty shall have the opportunity to appear before the Court at the Sale Hearing. In order for the Debtor to assume and assign any of the Executory Contracts or Leases, the proposed Cure Amount determined by the Court (if there is a Contract Objection) or set forth in the Assumption and Assignment Notice (if there is no Contract Objection) must be paid to the counterparty to the Executory Contract or Lease upon the assumption and assignment of such Executory Contract or Lease.

14. <u>Failure to File a Contract Objection.</u> If a Contract Objection is not timely and properly filed and served in accordance with this Order, (a) the Debtor's proposed Cure Amount shall be controlling with respect to the Executory Contract or Lease notwithstanding anything to the contrary in any Executory Contract or Lease or any other document, (b) such Executory Contract or Lease may be assigned to the Stalking Horse Bidder or, if applicable, the Successful Bidder, (c) the failure to object shall be deemed consent by the counterparty to the assumption and

assignment for the purposes of section 365(c) of the Bankruptcy Code or otherwise, (d) the counterparty to the Executory Contract or Lease shall be forever barred from asserting any other claim arising prior to the assignment, if applicable, against the Debtor, each Stalking Horse Bidder or, if applicable, the Successful Bidder as to such Executory Contract or Lease and (e) with respect to the Executory Contract or Lease, the applicable Stalking Horse Bidder or, if applicable, the applicable Successful Bidder's promise to perform under the Executory Contract or Lease shall be deemed adequate assurance of future performance under the Executory Contract or Lease.

15. Notwithstanding anything to the contrary herein, at any time prior to the Effective Closing Date, each Stalking Horse Bidder or, as applicable, the Successful Bidder, may, by Assignment Notice to the Debtor, change the designation of any Rejected Contract to be treated as an Assigned Contracts, in which case such Executory Contracts or Leases shall be deemed assumed and assigned as of the Effective Closing Date. As soon as practicable after the Effective Closing Date of any Sale to the Stalking Horse Bidder or, as applicable, the Successful Bidder, the Debtor shall provide notice of the assumption and assignment of each Assigned Contract which was assumed and assigned in connection therewith to each counterparty to such Assigned Contract. Any such notices in the case of customer contracts may be redacted in accordance with prior orders of this Court.

16. In the event that any counterparty is not served with the Assumption and Assignment Notice, and at any time prior to the Effective Closing Date at the request of the Stalking Horse Bidder or, if applicable, the Successful Bidder, such Bidder may designate the counterparty's Executory Contract or Lease as either a Rejected Contract or an Assigned Contract. If such Executory Contract or Lease is designated as an Assigned Contract, the Debtor shall promptly move to assign it to the Bidder, and such Bidder shall accept the assignment of such

Assigned Contract effective as of the Closing Date or such later date as the Court may direct. If such Executory Contract or Lease is designated as a Rejected Contract, then the Debtor shall promptly move to reject such Rejected Contract effective as of the Effective Closing Date unless such Executory Contract or Lease had been rejected pursuant to prior order of court.

### III.     Sale Hearing Notice and Related Relief

17.     The Sale Notice, annexed hereto as **Exhibit 3**, is hereby approved. Within two (2) days of the entry of this Order, the Debtor shall cause the Sale Notice to be served upon, without limitation, (i) the U.S. Trustee; (ii) the members of and counsel to the Committee, if any; (iii) counsel to the Debtor's prepetition lenders; (iv) counsel to the Debtor's postpetition lender; (v) the Attorneys General for each of the States in which the Acquired Assets are located; (vi) all taxing authorities having jurisdiction over any of the Acquired Assets, including the Internal Revenue Service; (vii) the United States Environmental Protection Agency, (viii) the Virginia Environmental Protection Agency, the South Carolina Environmental Protection Agency, the New York State Department of Environmental Conservation and any other applicable state environmental agency and any other governmental agency that is an interested party with respect to the Sale or the transactions proposed thereunder; (ix) the counterparties to the Assumed Contracts and, if any, the counterparties to those Contracts that are required to be rejected by the APAs; (x) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002; (xii) any parties who have expressed a written interest in any of the assets which are to be the subject of the Sale; (xiii) all parties who are known or reasonably believed to have asserted any lien, encumbrance, claim or other interest in any of the assets which is to be the subject of the Sale, including without limitation, in the "Acquired Assets" (as such term is defined in the Prudential APA); and (xiv) the Pension Benefit Guaranty Corporation.

18. The Debtor shall arrange for the Sale Notice to be published so as to appear in the following local and national newspapers within five (5) business days of the entry of this Order: The Post-Standard (Syracuse) and the New York Times.

19. The Debtor is authorized to execute and deliver all instruments and documents, and take such other action as may be necessary or appropriate to implement and effectuate the transactions contemplated by this order.

20. The requirements of Local Rule 6004-1 and 6004-2 are satisfied by the contents of the Motion.

21. The 14-day stay of this Order pursuant to Bankruptcy Rule 6004(h) is waived.

22. The breach of any Stalking Horse APA by the Debtor due to the failure of the Debtor to comply with any deadline provided therein that has expired as of the date of the entry of this Order, is waived. As stated on the record of the hearing on September 9, 2015, Prudential previously exercised its right to extend the deadline for the Closing Date to October 30, 2015, in accordance with Section 2.6 of the Prudential APA.

23. Notwithstanding anything to the contrary in the Prudential APA, the Debtor shall have the same right to terminate that Prudential has under section 9.1(k) of the Prudential APA, but only in the event that Prudential exercises its rights at Closing to reduce the Purchase Price under Section 2.3(d) of the Prudential APA.

24. Notwithstanding anything to the contrary in the Stalking Horse APAs, chapter 5 claims shall not be an Acquired Asset.

25. In the event of any inconsistencies between this Order and any Stalking Horse APA (or any APA with a Successful Bidder), the provisions of this Order shall govern.

26. This Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from, based upon or related to this order.

###