**EXHIBIT 1**

**(BIDDING PROCEDURES)**

# BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed with respect to the sale (the "Sale") of substantially all of the assets (the "Assets") of Coyne International Enterprises Corp. (the "Debtor") through an auction (the "Auction") to be held on October 27, 2015, at the offices of Herrick, Feinstein LLP, 2 Park Avenue, New York, New York 10016, commencing at 9:00 a.m., or such other time or place as the Debtor shall timely notify participants in the Auction and the Notice Parties (defined below). The Auction will be conducted by SSG Advisors, LLC ("SSG"), the Debtor's exclusive investment banker, in consultation with the Debtor and the Committee, and their respective professionals.

**I.        Stalking Horse Bidders**

The following parties (each a "Stalking Horse Bidder," and collectively, the "Stalking Horse Bidders," and the bid submitted thereby, a "Stalking Horse Bid") have executed asset purchase agreements (collectively, the "APAs") with respect to certain of the Assets as set forth in the respective APA and summarized below:

- Clean Rentals, Inc. d/b/a Clean Uniforms and More! ("Clean") is the Stalking Horse Bidder under an APA (the "Clean APA") for the Debtor's assets related to the Debtor's business in New Bedford, Massachusetts, as set forth in the Clean APA (the "New Bedford Business").

- Prudential Overall Supply, Inc. ("Prudential") is the Stalking Horse Bidder under an APA (the "Prudential APA") for certain of the Debtor's assets related to the Debtor's businesses in Greenville, South Carolina and Richmond, Virginia, or to associated service centers in Winchester VA, Raleigh NC, Atlanta GA, and Beckley WV, all as set forth in the Prudential APA (the "Greenville/Richmond Business").

- Coyne Acquisition LLC ("Newco") (an entity formed by NXT Capital LLC (collectively, on its own behalf and on behalf of any party for which it acts as agent, "NXT"), the Debtor's prepetition senior secured lender) is the Stalking Horse Bidder under an APA (the "Newco APA") for the Debtor's assets related to the Debtor's businesses in Buffalo, New York (the "Buffalo Business"), Cleveland, Ohio (the "Cleveland Business"), Bristol, Tennessee (the "Bristol Business"), Syracuse, New York (the "Syracuse Business"), York, Pennsylvania (the "York Business") and London, Kentucky (the "London Business"), together with their respective customer contracts and other assets, as set forth in the Newco APA (the "Remaining Businesses").

The Clean APA, the Prudential APA and the Newco APA shall be referred to herein individually as a "Stalking Horse APA," and collectively as the "Stalking Horse APAs".

**II.        Determining Potential Bidders**

To participate in the bidding process and to receive non-public information concerning the Assets, each interested person or entity (each such party, a "Potential Bidder") (other than the Stalking Horse Bidders) must deliver (unless previously delivered) to SSG, Five Tower Bridge, Suite 420, 300 Barr Harbor Drive, West Conshohocken, PA 19428 (Attn: Michael S. Goodman and Michael J. Gorman); counsel to the Debtor, Herrick, Feinstein LLP, 2 Park Avenue, New York, NY 10016 (Attn: Robert L. Rattet); counsel for the Official Committee of Unsecured Creditors (the "Committee"), Womble Carlyle, 222 Delaware Avenue, Suite 1501, Wilmington, DE 19801 (Attn.: Matthew P. Ward) (collectively, the "Notice Parties"), the following materials (the "Potential Bid Package") on or before October 23, 2015 at 5:00 p.m. (prevailing Eastern Time) (the "Bid Deadline")[3]:

- An executed confidentiality agreement in a form and substance reasonably acceptable to SSG and the Debtor;[4] and

- Evidence, including audited financial statements (or such other form of financial disclosure and credit-quality support or enhancement reasonably acceptable to SSG and the Debtor), sufficient to establish the financial wherewithal of the interested party to complete the contemplated transactions and, to the extent the interested party will rely upon the financial wherewithal of an affiliate, bid partner or other sponsor, evidence sufficient to establish the financial wherewithal and intent of the sponsor to provide appropriate financial support.

**III.        Determining Qualified Bids and Qualified Bidders**

    **A.        Terms and Conditions of a Qualified Bid**

In order to be deemed a "Qualified Bid" and for a Potential Bidder (other than each Stalking Horse Bidder) to be deemed a "Qualified Bidder", each offer, solicitation or proposal (a "Bid") from a Potential Bidder (other than the Stalking Horse Bidders) (each a "Potential Bid") must be in writing and must:

    1.    state that the Potential Bidder is prepared to enter into a legally binding purchase and sale agreement or similar agreement for the acquisition of the relevant Assets on terms and conditions no less favorable to the Debtor than the terms and conditions contained in the relevant APA (as determined by the Debtor in its reasonable, good-faith business judgment, in consultation with SSG and its professionals), and provided, that no portion of the purchase price provided for in such purchase and sale agreement shall

---

[3] The Debtor will provide Potential Bid Packages to counsel for NXT; counsel to Medley Opportunity Fund II LP ("Medley"); and Lee Woodard, as examiner (the "Examiner").

[4] With respect to Potential Bidders for the Greenville/Richmond Business, the confidentiality agreement shall be in a form and substance reasonably acceptable to SSG, the Debtor and Prudential, and otherwise comply with the requirements of the Prudential APA.

2

    include assumption of the senior secured indebtedness of the Debtor to NXT without the prior written consent of NXT;[5]

2.  be accompanied by a clean and duly executed modified APA and a marked modified APA reflecting the Potential Bidder's proposed variations from the relevant APA, which may not be materially more burdensome to the Debtor or inconsistent with the applicable Stalking Horse APA or order of the Court in the Debtor's chapter 11 case;

3.  state that the Potential Bidder's offer is irrevocable until the closing of the Sale if such Potential Bidder is determined at the Auction to be (i) the highest and otherwise best bid with respect to each Auction described below (each a "Successful Bidder," and each such bid, a "Successful Bid"), or (ii) the next highest and otherwise best bid with respect to each Auction described below (each an "Alternate Bidder," and each such bid, an "Alternate Bid");

4.  contain such financial and other information that will allow the Debtor, after consultation with SSG and its professionals, to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate the transactions contemplated by the Sale;

5.  identify with particularity each and every executory contract as to which assumption and assignment to the Potential Bidder is a condition to closing under the proposed transaction;

6.  represent that the Potential Bidder will not request or assert entitlement to any transaction or break-up fee, expense reimbursement or similar type of payment;

7.  fully disclose the identity of any sponsor and each other entity that will be bidding for, purchasing or obtaining possession of some or all of the Assets, or otherwise participating in connection with such Bid, together with the complete terms of any such participation;

---

[5] With respect to a Qualified Bid for the New Bedford Business, the value of the bid must be in an amount greater than the Stalking Horse Bid for the New Bedford Business plus the Breakup Fee of $100,000 requested by Clean plus the $100,000 bidding increment described below.

With respect to a Qualified Bid for the Greenville/Richmond Business, the value of the bid must be in an amount greater than the Stalking Horse Bid for the Greenville/Richmond Business plus the Breakup Fee of $200,000 requested by Prudential plus the $100,000 bidding increment described below.

With respect to a Qualified Bid for all Assets, the value of the bid must be in an amount greater than the aggregate of all of the Stalking Horse Bids, plus the Breakup Fees of Clean and Prudential, and the $100,000 bidding increment described below.

8. be free from any due diligence, financing or regulatory contingencies of any kind, and be free from the need to obtain shareholder, board of directors or other approval of any kind;

9. state whether the Potential Bidder intends to assume the Coyne Textile Services, Inc. Union Pension Plan (the "Pension Plan")[6];

10. be accompanied by a deposit at least equal to 10% of the purchase price (the "Good Faith Deposit"), by wire transfer of immediately available funds to an account or accounts designated by the Debtor; and

11. be received by the Debtor and SSG on or before the Bid Deadline.

### B. Qualified Bidders

Notwithstanding anything in these Bidding Procedures to the contrary, each Stalking Horse Bidder is deemed a Qualified Bidder, and each Stalking Horse Bidder's Bid shall be deemed a Qualified Bid for all applicable purposes under these Bidding Procedures with respect to the Sale, any Auction, or otherwise. Medley is also deemed a Qualified Bidder.

After the Debtor has determined that a Bid satisfies each of the conditions set forth above, the Debtor or SSG shall notify promptly the Potential Bidder who submitted such Qualified Bid that it has been selected as a Qualified Bidder; *provided*, *however*, that the Debtor reserves the right, after consultation with SSG and its professionals, to reject any Potential Bid if the Debtor determines that such Potential Bid is inadequate or insufficient or the Debtor determines that such Potential Bid is not in conformity with the requirements of the Bankruptcy Code or any related rules or is otherwise contrary to the best interests of the Debtor and its estate. Any bid that is not deemed by the Debtor to be a "Qualified Bid" shall not be considered by the Debtor.

### C. Negotiation and Modification of Qualified Bids

Between the Bid Deadline and the Auction, the Debtor may discuss, negotiate or seek clarification of any Qualified Bid from a Qualified Bidder. Without the written consent of the Debtor a Qualified Bidder may not modify, amend or withdraw its Qualified Bid, except for proposed amendments to increase the purchase price or otherwise improve the terms of the Qualified Bid for the Seller, during the period that such Qualified Bid remains binding as specified herein; *provided*, *however*, that any Qualified Bid may be improved at the Auction as set forth herein.

---

[6] The Debtor is the contributing plan sponsor of the Pension Plan, as defined in 29 U.S.C. § 1301(a)(13). If the Pension Plan is terminated, the Debtor believes it is liable for unfunded benefit liabilities of the Pension Plan, missed minimum funding contributions, and unpaid insurance premiums. Currently, there are 93 participants of the Pension Plan. The Debtor believes the Pension Plan is underfunded by approximately $900,000. The parties are continuing their investigation of the Pension Plan and calculation of owed pension liabilities. PBGC, on behalf of the Pension Plan, will be filing claims in the Debtor's chapter 11 case. Any Qualified Bid may be a combination of cash and certain assumed obligations, including obligations with respect to the Pension Plan. In determining the Successful Bidder, the Debtor, based on its discretion and expertise, shall consider, and attribute appropriate value to, any bid that assumes the liabilities of the Pension Plan.

4

### D. Evaluation of Qualified Bids

The Debtor shall provide each Stalking Horse Bidder and all other Qualified Bidders (i) as promptly as practicable (and no later than 5:00 p.m. (prevailing Eastern Time) on the day prior to the Auction), copies of all asset purchase agreements received by the Debtor as part of any Qualified Bids (the "Qualified APAs") and (ii) as promptly as practicable (and no later than 5:00 p.m. (prevailing Eastern Time) on the day prior to the Auction), copies of all agreements, schedules, exhibits and annexes related to the Qualified APAs, other than (a) agreements, schedules, exhibits and annexes which contain confidential or financial information of the person or entity submitting such Qualified APA and (b) financing letters delivered in connection with such Qualified APA.[7]

Prior to the Auction, and upon consultation with SSG, with the Debtor's other advisors and with the Committee's professionals, the Debtor, in consultation with the Committee shall evaluate all Qualified Bids and identify the Qualified Bid that is, in the Debtor's reasonable, good faith business judgment, the highest and otherwise best bid for the applicable Assets (the "Starting Bid").  No later than 5:00 p.m. (prevailing Eastern Time) on the day prior to the Auction, SSG shall notify each Stalking Horse Bidder as to which each Qualified Bid is the Starting Bid.  By no later than 5:00 p.m. (prevailing Eastern Time) on the day prior to the Auction, SSG shall distribute copies of the Starting Bid (other than portions that contain confidential or financial information of such bidder and other than financing letters delivered in connection with such Starting Bid) to each Qualified Bidder who has submitted a Qualified Bid (including the Stalking Horse Bidders).

## IV. No Qualified Bids

If no Qualified Bids for any of the Assets are received by the Bid Deadline other than the Stalking Horse APAs, then the Auction will not occur and Clean will be deemed the New Bedford Business Successful Bidder, Prudential will be deemed the Greenville/Richmond Business Successful Bidder, and Newco will be deemed the Remaining Businesses Successful Bidder. Additionally, subject to the termination rights, if any, under the respective Stalking Horse APAs, the Debtor will immediately pursue entry of an order by the Court approving the Stalking Horse APAs and authorizing the sale of assets to the respective Stalking Horse Bidders.

## V. The Auction

The Auction will be governed by the following general guidelines, subject to the procedures for the specific auctions described below.

### A. Attendance at and Participation in the Auction

In addition to the Debtor and its advisors, the only parties eligible to participate in the Auction shall be: (i) the Stalking Horse Bidders and their representatives and advisors; (ii) representatives and advisors of the Committee; (iii) Qualified Bidders and their representatives and advisors; (iv) the United States Trustee for the Northern District of New York; and (v) the Examiner and his advisors.  The Stalking Horse Bidders and the Qualified Bidders shall appear in

---

[7] With respect to Prudential, the deadlines set forth in this paragraph shall be governed by the Prudential APA.

5

person at the Auction, or through a duly authorized representative. In addition, each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

    **B.**    **The Auction Process**

1. If one or more Qualified Bids are received by the Bid Deadline, then the Debtor shall conduct the Auction. The Debtor, in consultation with its professionals and the Committee, shall direct and preside over the Auction.

2. At the commencement of each Auction described below, SSG shall announce and describe the terms of the highest and otherwise best Qualified Bid, as determined by the Debtor, in its reasonable, good faith business judgment, after consultation with its professionals and the Committee;

3. Only the applicable Stalking Horse Bidder and the Qualified Bidders shall be entitled to make any subsequent bids at the Auction.

4. Bidding shall commence at the amount of highest and otherwise best Qualified Bid. Subsequent bids at the Auction, including any bids by the Stalking Horse Bidder, shall be made at a minimum overbid increment of $100,000 (each such bid, an "Overbid"); *provided*, *however*, that the Debtor shall retain the right, after consultation with its professionals and the Committee, to modify the bid increment requirements at the Auction on the condition that any such other modifications shall not be inconsistent with any order of the Court in the Debtor's chapter 11 case.

5. The Stalking Horse Bidders shall receive a credit equal to the sum of the Break-Up Fee, if any, applicable to its transaction in each round of bidding when bidding at the Auction.

6. The Debtor, in consultation with the Committee, shall announce the material terms of each Overbid at the Auction, and shall disclose the Debtor's valuation of the total consideration offered in each such Overbid (and the basis for its determination) in order to confirm that each Overbid meets the requisite bid increment and to provide a floor for further Overbids.

7. The bidding will be transcribed to ensure an accurate recording of the bidding at the Auction.

8. Each Qualified Bidder will be required to confirm on the record of the Auction that it has not colluded with any other person with respect to the bidding or the Sale.

9. Absent irregularities in the conduct of the Auction, the Court will not consider bids made after the Auction is closed.

6

          10.      All Qualified Bidders shall have the right to submit additional Overbids and make additional modifications to the applicable APA at the Auction, provided that each such Overbid must be made within a reasonable period of time, as determined by the Debtor, in consultation with the Committee, following the announcement of the immediately preceding Overbid, or by sealed bid, as applicable, *provided, however,* that any such submissions or modifications shall not be inconsistent with any order of the Court in the Debtor's chapter 11 case.

**VI.      New Bedford Business Auction**

If one or more Qualified Bids for the New Bedford Business is received by the Bid Deadline, then the Debtor shall conduct an Auction for the New Bedford Business (the "New Bedford Business Auction").

Upon the conclusion of the New Bedford Business Auction (if a New Bedford Business Auction is conducted), the Debtor and the Committee, in the exercise of their reasonable, good-faith business judgment, and after consulting with their advisors, shall identify (i) the highest and otherwise best bid(s) (the "New Bedford Business Successful Bid," and such bidder, the "New Bedford Business Successful Bidder"), and (ii) the next highest and otherwise best bid (the "Alternate New Bedford Bid," and such bidder, the "Alternate New Bedford Bidder").

If no Qualified Bid is received for the New Bedford Business, the New Bedford Business Auction will not occur and Clean will be deemed the New Bedford Business Successful Bidder immediately upon the expiration of the Bid Deadline.

**VII.      Greenville/Richmond Business Auction**

If one or more Qualified Bids for the Greenville/Richmond Business is received by the Bid Deadline, then the Debtor, in consultation with the Committee, shall conduct an Auction for the Greenville/Richmond Business (the "Greenville/Richmond Business Auction") at the conclusion of the New Bedford Business Auction.

Upon the conclusion of the Greenville/Richmond Business Auction (if a Greenville/Richmond Business Auction is conducted), the Debtor and the Committee, in the exercise of their reasonable, good-faith business judgment, and after consulting with their respective advisors, shall identify (i) the highest and otherwise best bid(s) (the "Greenville/Richmond Business Successful Bid," and such bidder, the "Greenville/Richmond Business Successful Bidder"), and (ii) the next highest and otherwise best bid (the "Alternate Greenville/Richmond Bid," and such bidder, the "Alternate Greenville/Richmond Bidder").

If no Qualified Bid is received for the Greenville/Richmond Business, the Greenville/Richmond Business Auction will not occur and Prudential will be deemed the Greenville/Richmond Business Successful Bidder immediately upon the expiration of the Bid Deadline.

In connection with any bid by NXT (or any transferee of its claims) at any Greenville/Richmond Business Auction, NXT (for itself and as Agent, and for any transferee of

its claims) has agreed to waive its right under 11 U.S.C. § 363(k) to "credit bid" or otherwise offset its claims against the purchase price for the Greenville/Richmond Business at any Greenville/Richmond Business Auction.

Medley Opportunity Fund II LP (on its own behalf and on behalf of any party for which it acts as agent, "Medley") and its transferees, as the holder of claims secured by junior liens on the Greenville/Richmond Business, may not "credit bid" or otherwise offset its claims against the purchase price for the Greenville/Richmond Business at any Greenville/Richmond Business Auction, unless its bid otherwise includes cash in an amount sufficient to satisfy in full the debts secured by liens senior to Medley's liens on the Greenville/Richmond Business.

## VIII.   Remaining Businesses Auction

If one or more Qualified Bids for some or all of the Remaining Businesses is received by the Bid Deadline, then the Debtor, in consultation with the Committee, shall conduct an Auction for the Remaining Businesses (the "Remaining Businesses Auction") at the conclusion of the Greenville/Richmond Business Auction.

Qualified Bidders may submit Bids for some or all of the Remaining Businesses. The Debtor, in consultation with the Committee, will have discretion to compare separate, multiple Bids in the aggregate against the Newco Stalking Horse Bid, including by assigning an orderly net liquidation value to one or more Remaining Businesses that is not part of a competing Bid in determining the overall value of such competing Bid. The standalone value of each Remaining Business shall be determined by the Debtor in consultation with the Committee, NXT and Medley prior to the Auction, but will not otherwise be disclosed prior to the Remaining Businesses Auction.

Upon the conclusion of one or more Remaining Businesses Auctions (if a Remaining Businesses Auction is conducted), the Debtor and the Committee, in the exercise of their reasonable, good-faith business judgment, and after consulting with their respective advisors, shall identify the highest and otherwise best bid(s) for some or all of the Remaining Businesses (each an "Initial Remaining Businesses Successful Bid," and such bidder, the "Initial Remaining Businesses Successful Bidder"), subject to the following paragraph.

The Debtor shall conduct a final round of sealed bidding for the Remaining Businesses with the aggregate of the Initial Remaining Business Successful Bidders and any bidder(s) on all of the Remaining Businesses. The Successful Bidder for the Remaining Businesses will be determined by the Debtor and the Committee, in consultation with their respective professionals, based on the final sealed bids, and the Debtor and the Committee, in the exercise of their reasonable, good-faith business judgment, and after consulting with their respective advisors, shall identify (i) the highest and otherwise best bid(s) (the "Remaining Businesses Successful Bid," and such bidder, the "Remaining Businesses Successful Bidder"), and (ii) the next highest and otherwise best bid for the Remaining Businesses (the "Alternate Remaining Businesses Bid," and such bidder, the "Alternate Remaining Businesses Bidder").[8]

---

[8] The value of the Newco Stalking Horse Bid includes Newco's agreement to make payments due under a key employee retention program (the "KEIP"), provide that any KEIP is subject to Court approval. If Newco is not the

8

**IX.        All Plants Auction**

The Debtor, in consultation with the Committee, shall conduct an auction for all of the Assets (the "All Plants Auction") at the conclusion of the Remaining Businesses Auction.

Upon the conclusion of the All Plants Auction (if an All Plants Auction is conducted), the Debtor and the Committee, in the exercise of their reasonable, good-faith business judgment, and after consulting with their respective advisors, shall identify the highest and otherwise best bid for all of the Assets (the "All Plants Successful Bid," and such bidder, the "All Plants Successful Bidder").

**X.        Final Auction**

If an All Plants Successful Bid is identified, then the Debtor shall conduct a final Auction between the All Plants Auction Successful Bidder, on the one hand, and the Successful Bidder(s) of the New Bedford Business, the Greenville/Richmond Business, and the Remaining Businesses, on the other hand (the "Final Auction"). At such Final Auction, the participating bidders shall simultaneously submit a final sealed bid. The Successful Bidder(s) for the Assets will be determined by the Debtor and the Committee, in consultation with their respective professionals, based on the final sealed bids, and the Debtor and the Committee, in the exercise of their reasonable, good-faith business judgment, and after consulting with their respective advisors, shall identify (i) the highest and otherwise best bid(s) (the "Final Auction Successful Bid," and such bidder, the "Final Auction Successful Bidder"), and (ii) the next highest and otherwise best bid (the "Alternate Final Auction Bid," and such bidder, the "Alternate Final Auction Bidder").

If the Successful Bidder(s) in the Final Auction is the All Plants Successful Bidder, then each of the Successful Bids in the New Bedford Business Auction, the Greenville/Richmond Auction and the Remaining Businesses Auction shall be the respective Alternate Bids, as such applicable APA may be modified at the Auction by such Successful Bidder; *provided*, *however*, that (x) nothing in these Bidding Procedures shall obligate Prudential to be an Alternate Bidder, and (y) if Clean is the New Bedford Successful Bidder, the terms and conditions of the Clean APA (as may be modified at the Auction) shall govern. If the Successful Bidder(s) in the Final Auction is the aggregate of the New Bedford Business Successful Bidder, the Greenville/Richmond Successful Bidder, and the Remaining Businesses Successful Bidder, then the All Plants Successful Bid shall be the Alternate Final Auction Bid.

**XI.        Acceptance of Successful Bid(s)**

The Debtor and the Committee will present the results of the Auction to the Court at the Sale Hearing (as defined below), at which time certain findings will be sought from the Court regarding the Auction, including, among other things, that (i) the Auction was conducted, and the Successful Bidder(s) was selected, in accordance with these Bidding Procedures, (ii) the Auction was fair in substance and procedure, (iii) the Successful Bid(s) was a Qualified Bid(s), and

---

Remaining Businesses Successful Bidder, cash in an amount necessary to make payments under the KEIP will be earmarked for such payment from the Remaining Businesses Successful Bid.

9

(iv) consummation of the Sale contemplated by the Successful Bid(s) will provide the highest and otherwise best value for the Acquired Assets and is in the best interests of the Debtor.

The Debtor shall be bound by the Successful Bid(s) only when such Bid has been approved by the Court at the Sale Hearing; *provided, however,* that nothing in these Bidding Procedures shall modify any rights to which any Stalking Horse Bidder may be entitled under the Stalking Horse Bidder's respective APA.

If the Debtor and the Committee cannot agree on a determination of the Successful Bid for any of the Auctions set forth above, each of the Debtor and the Committee shall reserve its right to present to the Court what each believes to be the highest and otherwise best bid with respect to any Auction and the Court shall determine the highest and otherwise best bid.

Except as otherwise provided in the form of the APA agreed to by the Debtor, after consultation with the Committee, and the Successful Bidder(s), and to the fullest extent permitted by the jurisdiction of the Court, all of the Debtor's right, title and interest in and to the Assets shall be sold free and clear of all claims, interests and encumbrances, other than assumed liabilities as set forth in the applicable APA, with such claims, interests and encumbrances attaching to the proceeds of the Sale with the same validity and priority as the they had on the Assets immediately prior to their sale.

## XII.     Sale Hearing

The hearing (the "Sale Hearing") to approve the Sale to the Successful Bidder(s) shall be held on **October 29, 2015 at 11:00 a.m.** (prevailing Eastern Time) or as soon thereafter as counsel may be heard before the Honorable Margaret Cangilos-Ruiz, United States Bankruptcy Court, Northern District of New York, James M. Hanley Federal Building, 100 South Clinton Street, Syracuse, New York, and may be adjourned from time to time without further notice other than an announcement in open court at the Sale Hearing; *provided, however,* that the Sale Hearing may not be continued past any date upon which the parties agreed in any APA.

At the Sale Hearing, the Debtor and the Committee will present the Successful Bid(s) to the Court for approval, and will seek entry of an order, *inter alia*, authorizing and approving the sale of the Assets to the Successful Bidder(s) pursuant to the terms and conditions set forth in the applicable APA agreed to by such Successful Bidder(s).

## XIII.    Alternate Bids

The applicable Alternate Bidder will be required to keep the Alternate Bid open, binding and irrevocable until the closing of the Sale(s) except to the extent the Alternate Bidder's applicable APA provides otherwise, in which case the terms and conditions of the Alternate Bidder's applicable APA (as such applicable APA may be modified by the Alternate Bidder at the Auction) shall govern. If for any reason the applicable Successful Bidder fails to consummate the purchase of the relevant Assets within the time permitted in the applicable APA, the applicable Alternate Bidder will automatically be deemed to have submitted the highest and otherwise best bid and the Debtor will be authorized, but not required, to consummate the Sale(s) with the applicable Alternate Bidder(s) without further order of the Court, except to the extent the Alternate Bidder's applicable APA provides otherwise, in which case the terms and conditions of the

Alternate Bidder's applicable APA (as such applicable APA may be modified by the Alternate Bidder at the Auction) shall govern. At the Sale Hearing, the Debtor will seek approval to sell the relevant Assets to the applicable Alternate Bidder on the terms of the applicable Alternate Bid without further notice or order of the Court.

### XIV.     Treatment of Good Faith Deposits

The Good Faith Deposit of Prudential shall be credited to the purchase price paid for the Greenville/Richmond Business, or otherwise returned to Prudential, as provided in the Prudential APA.

With respect to any other Good Faith Deposit held by the Debtor, each such Good Faith Deposit will be forfeited to the Debtor if (a) the applicable Qualified Bidder attempts to modify, amend or withdraw its Bid, except for proposed amendments to increase the purchase price or otherwise improve the terms of the Bid for the Debtor, during the time the Bid remains binding and irrevocable under these Bidding Procedures, or (b) the Qualified Bidder is selected as the Successful Bidder and fails to consummate the purchase of the relevant Assets according to these Bidding Procedures. The Debtor shall promptly return to the applicable Qualified Bidder any Good Faith Deposit accompanying (a) a Bid that the Debtor determines not to be a Qualified Bid, and (b) any Qualified Bid that the Debtor does not select as the Successful Bid at the Auction.

### XV.     Break-Up Fee

The Debtor shall pay to each of the Stalking Horse Bidders, by wire transfer in immediately available funds to an account designated by each Stalking Horse Bidder, any Break-Up Fee due to the Stalking Horse Bidder under its respective Stalking Horse APA, which amounts shall be paid pursuant to the terms and conditions of the applicable Stalking Horse APA. Each Break-Up Fee was a material inducement for, and a condition of, each of the Stalking Horse Bidders entering into its respective Stalking Horse APA.

### XVI.     Reservation of Rights; Deadline Extensions

The Debtor reserves its rights, after consultation with the Committee and in the exercise of its fiduciary obligations, to modify the Bidding Procedures or impose, at or before the Auction, additional customary terms and conditions on the sale of the Assets in any manner that is not inconsistent with the Stalking Horse APAs or the order approving these Bidding Procedures and that will best promote the goals of the bidding process and to impose, at or prior to the Auction, additional customary terms and conditions on the sale of the Assets, including, without limitation, extending the deadlines set forth in the Bidding Procedures, modifying bidding increments (provided that there shall be no reduction of the Breakup Fee requested by Clean and Prudential), adjourning the Auction at the Auction and/or adjourning the Sale Hearing in open court without further notice, withdrawing from the Auction any or all of the Assets at any time prior to or during the Auction, or canceling the Auction, and rejecting all Qualified Bids if, in the Debtor's business judgment, after consultation with the Committee, no such bid is for a fair and adequate price.

**XVII.**     **Miscellaneous**

In the event any of the Stalking Horse Bidders is not the Successful Bidder, each such Stalking Horse Bidder shall have standing to object to the Sale of the Acquired Assets or any portion thereof (including the conduct of the Auction and interpretation of these Bidding Procedures) at the Sale Hearing.

The Debtor will provide access and information to the Examiner regarding all aspects of the Auction and sale process, consistent with the stipulation and order appointing the Examiner.